MARY ELIZA ROWLAND, Respondent, v. CHARLES MILLER, Appellant.

A person owning a tract of land and selling a portion thereof may, for the benefit of his remaining land, impose any restrictions not against public policy he sees fit upon the land granted, and a court of equity will, as a general rule, enforce them.

The owner of certain adjoining lots in New York city sold a number of them, she and the purchasers entering into an agreement "for themselves, their representatives, heirs and assigns," containing mutual covenants, among others, that no trade or business shall be "carried on upon said lots which shall be injurious or offensive to the neighboring inhabitants, it being expressly agreed that this covenant runs with the land and is binding on all future owners thereof." In an action brought by plaintiff, the owner of one of the lots so sold, which she occupied as her residence, against the owner of another of said lots and his tenant, to restrain an alleged violation of said agreement, it appeared that the tenant, a corporation whose business was that of undertakers, fitted up and was using the building upon the

demised premises, which previously had been occupied as a dwelling house, for the purposes of its business, a part of which was the reception of dead human bodies, their preparation for burial, etc., and also fitted up the front basement "for the special purpose of holding autopsies upon and for the dissection and other post-mortem examination of dead human bodies;" that for the purpose of preventing the escape into other parts of said building "of the foul and noxious odors which usually escape" from the bodies during such examinations, the company had opened ventilating holes from the dissection room into chimney flues. *Held,* that this constituted a violation of the agreement, and plaintiff was entitled to an injunction restraining the use of defendant's premises for the purpose of post-mortem examinations and dissecting or storing dead bodies, or for funerals; that the covenant was not limited to such kinds of business as are nuisances *per se,* nor on the other hand did it prohibit a business simply because it might be offensive to a peculiarly sensitive person, but that the intent was to prohibit a business which would be offensive to persons generally ; that the business of the company was offensive within the agreement, as thus construed, and that the court could take judicial notice of its character in this respect; that the ventilation of the dissecting room in the manner stated, did not relieve the business of its offensive character.

It was claimed that the covenant should not be enforced, because most of the lots in the block were no longer used as residences. *Held,* untenable ; that plaintiff had the right to still occupy her lot as a residence, and in such occupation to have the protection of the covenant.

*Trustees of Columbia College* v. *Thacher* (87 N. Y. 311), distinguished.

(Argued June 6, 1893 ; decided October 3, 1893.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 2, 1892, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts are sufficiently stated in the opinion.

In November, 1865, Miss Burr owned several lots of land in the city of New York, on the easterly side of Madison avenue, extending easterly to Vanderbilt avenue, between 42d and 44th streets, all of which were then vacant ; and on the 20th day of that month she contracted to sell eight of the lots to Pierson and Cochran. Those lots extended southerly from the southerly line of 43d street one-half way to

the northerly line of 42d street. She still retained title to several lots in the same vicinity, and on the same day she and they entered into a mutual agreement " for themselves and their representatives, heirs and assigns, owners of any of the said lots above described, that no buildings other than dwelling houses at least two stories high, of brick or stone, or churches, chapels or private stables of the same material, shall be erected on any of said lots ; that no livery or other stable shall be erected on lots fronting on Madison avenue, and that there shall not be allowed or erected on any part of said lots of land any tenement house, brewery or lager beer saloon, tavern, slaughter house, butcher's or smith's shop, forge, furnace, steam engine, foundry, carpenter's or carriage or car shop, manufactory of metals, gunpowder, glue, varnish, vitriol, turpentine, ink or matches, or any distillery, or any establishment for dressing hides, skins or leather, or any museum, theater, circus or menagerie, nor shall any other buildings be erected or *trade or business carried on upon said lots which shall be injurious or offensive to the neighboring inhabitants ;* it being expressly agreed that this covenant runs with the land, and is binding on all future owners thereof." This agreement is called the restriction agreement, and the lots have since been conveyed subject thereto.

The defendant Miller has become the owner of the lot on the corner of Madison avenue and 43d street, and the plaintiff owns the lot next southerly thereof, which she occupies as her residence ; and no question is made that those lots passed into the ownership of the plaintiff and Miller subject to the restriction agreement. On the 1st day of December, 1890, Miller leased his lot with the house thereon to the Taylor Company for the term of ten years, and it entered into the possession thereof. This action was commenced on the 31st day of January, 1891, to restrain the defendants from violating the covenants contained in the restriction agreement, by carrying on a business condemned thereby. The action was brought to trial at a Special Term, and the trial judge described the business carried on upon the Miller lot as follows :

" That the business of said company is, and for many years
has been, that of undertakers, and that a part of that business
consists in the reception of human dead bodies, their prepara-
tion for burial or other sepulture, involving embalmment in
some instances, and in the sale of coffins, caskets, shrouds and
other paraphernalia generally used in the final disposition of
dead human bodies. That said company, when it obtained
said lease, intended to fit up the building on said premises,
which for the most part is built and arranged like an ordinary
first-class corner dwelling house in that locality, for the pur-
poses of their business, and have fitted up the same and are
now carrying on their said business in said building. That
said company keeps and uses fourteen wagons in its business,
each of which (save one) is painted and otherwise fitted up
after the manner of wagons used by undertakers in transport-
ing dead human bodies or funeral appliances. That it has
fitted up a room in said building called by said company a
chapel, and intended by it for the use of people who desire to
conduct or hold funeral services, and not for religious worship
or services except so far as such worship or services may be
incidental to such funeral ceremonies, which use of said chapel
is a part of the business of the said company, and from which it
expects and intends to make money. That said company has
also fitted up the front basement of said building (which
hitherto was like the front basement of an ordinary dwelling
in that locality) with special reference to and for the special
purpose of holding autopsies upon and for the dissection
and other post-mortem examination of dead human bodies,
having prepared a marble table for that special purpose,
and closed up the windows and other means of looking into
their said autopsy room, in order to prevent observation of
idle or curious people, who might otherwise be tempted to
congregate about and look into the basement windows while
dead human bodies were undergoing such dissection or
examination. That in order to prevent the escape into other
parts of said building of the foul and noxious odors and
gases which usually escape from dead human bodies during

autopsical or other post-mortem examinations, said company have opened ventilating holes from said dissection room into two chimney flues, and placed gas jets in said flues in the hope and expectation that such gases and odors would escape from said building into the air above said building by means of such chimney flues, but they have taken no other precaution to prevent the spread of such odors and gases after their expected escape from the chimney flues. That a part of the undertaking business consists in the receipt and temporary storage of dead human bodies, and in affording facilities for autopsical or other post-mortem examinations upon such bodies whenever it is desired or required. That the parlor floors of said building have been elegantly fitted up for funeral purposes, and are designed by said company for that use, not as a matter of charity, but as a matter of business, and for business profit. That said company have extensively advertised their said business, and the use which they propose to make and are making of said building, and that they will furnish professional embalmers, and that their premises will be kept open day and night for the purposes of their business, by means of advertisements in newspapers which circulate mainly among undertakers, and by means of circulars addressed to the members of the medical profession generally in New York city and vicinity, in which they offer the use of the said dissecting room and other autopsical facilities free of charge. That already there have been several funerals held at said company's said rooms, one of them a Chinese funeral. That already there have been held several autopsies and post-mortem examinations of dead human bodies in said dissecting rooms, and it is the hope and expectation of the said company to increase the use of their said premises for the foregoing purposes, as a matter of business in order to make money." And he found that the carrying on of such business was a violation of the restriction agreement, and he ordered judgment restraining it. The sixth clause of the judgment is as follows: .

"*Sixth.* The action having been tried by the parties on the theory that it involved the question whether the combination

of purposes (the one associated with and depending on the other) to which the Taylor Company devoted the building occupied by it under the lease from the defendant Miller, violated the covenants aforesaid, and the defendants having made no claim that any one particular use was exempt from the operation of the covenants, it is ordered that upon payment of the costs awarded and proof that the combination of purposes has ceased, and the use of the premises for the business of holding autopsies or other post-mortem examinations, dissecting, receiving and storing of dead bodies, and the use of said premises for the business of having funerals therefrom, has been abandoned, the said defendants may at any time apply to the court, on notice, to modify the injunction so as to permit the lessees to run the office and parlors connected with said premises to solicit orders and sell coffins by sample in the wareroom, and to use the room called a chapel for the legitimate purposes of a chapel, that is, as a place of worship, all within such limitations as may be necessary to preserve the integrity of the covenants and not offend its spirit and purpose."

Subsequently to the rendition of the judgment, the Taylor Company having complied with that clause and shown that the business complained of by the plaintiff had ceased, upon its application to the court the following order was made:

" Ordered, that the injunction contained in the said judgment or decree be, and the same hereby is, modified in compliance with the provisions of the sixth paragraph of the said judgment or decree, so as to permit the said defendant, the Taylor Company, the lessees of the premises mentioned and described in the said judgment or decree, and the said lessees are hereby permitted to run the office and parlors connected with said premises to solicit orders and sell coffins by sample in the wareroom, and to use the room called a chapel for the legitimate purposes of a chapel, that is, as a place of worship, so long as such uses do not impair the integrity of the covenants contained in the restriction agreement in said judgment or decree more particularly referred to, and so as not to

offend the spirit and purposes of the said covenants or of the said restriction agreement, without prejudice to the right of said plaintiff to apply to the court to prevent or punish any abuses of said injunction as thus modified." The defendant Miller alone appealed from the judgment to the General Term, where it was affirmed, and then he appealed to this court.

*George Zabriskie* for appellant. The findings of fact on which this judgment was based were not sustained by evidence and were insufficient to warrant the judgment. (*Crump* v. *Lambert,* L. R. [3 Eq.] 569 ; *Walter* v. *Selfe,* 4 De G. & S. 315 ; *Gibson* v. *Donk,* 7 Mo. App. 38 ; *Behan* v. *S. J. Co.,* 122 N. Y. 23.) The trial court erred in the principles adopted by it in reaching the judgment, or misapplied them. (*Demarest* v. *Hardham,* 34 N. J. Eq. 469, 474 ; *Cleveland C. G. L. Co.,* 20 id. 201 ; *Barnes* v. *Hathorn,* 54 Me. 124 ; *Monk* v. *Packard,* 71 id. 309 ; *Musgrove* v. *S. L. Ch.,* 10 La. Ann. 431 ; *Ellison* v. *Comrs.,* 5 Jones' Eq. 57 ; *Harrison* v. *Good,* L. R. [11 Eq.] 338, 351 ; *Westcott* v. *Middletown,* 43 N. J. Eq. 478 ; *P. R. R. Co.* v. *Angell,* 41 id. 316 ; *B. & P. R. R. Co.* v. *F. B. Church,* 108 U. S. 317 ; *St. Helens Case,* 11 H. L. C. 642 ; *Bohan* v. *P. J. Co.,* 122 N. Y. 23, 34 ; *Owen* v. *Phillips,* 73 Ind. 284 ; *Salvin* v. *N. B. Co.,* L. R. [9 Ch.] 705 ; Pollock on Torts, 331 ; *Ross* v. *Butler,* 19 N. J. Eq. 284.) The restriction agreement is, in reality, a covenant against nuisances, and nothing more, and does not bind the owner of the land any further than he would be bound by the law in the absence of any covenant. (*Clement* v. *Burtis,* 121 N. Y. 708 ; *Robinson* v. *Smith,* 7 N. Y. Supp. 38 ; *People* v. *Cunningham,* 1 Den. 524 ; *Francis* v. *Schoellkopf,* 53 N. Y. 152 ; *Bohan* v. *P. J. G. L. Co.,* 122 id. 18 ; *Ross* v. *Butler,* 19 N. J. Eq. 294 ; *Hutchins* v. *Smith,* 63 Barb. 251 ; *Howard* v. *Lee,* 3 Sandf. 281 ; *Campbell* v. *Seaman,* 63 N. Y. 368 ; *Walker* v. *Webster,* L. R. [5 Eq.] 25 ; *Inchbald* v. *Robinson,* L. R. [4 Ch.] 388 ; *Pickard* v. *Collins,* 23 Barb. 444.) The evidence clearly established that neither the business nor

the establishment of the Taylor Company was injurious to health or to the value of property, and the court erred in refusing to find in accordance with the defendant's request relating thereto. (*Baird* v. *Daly*, 68 N. Y. 547.) The answers to the hypothetical question to the witness Fay, and the several succeeding questions to the same witness, and the questions to Clark, and those to Lesher, and those to Kennedy, and to Holly, and to Rowland, to which defendant excepted were improperly received. (*Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 424; *Roberts* v. *N. Y. E. R. R. Co.*, 128 id. 455.) The judgment in the suit of *Rowland* v. *Miller, Morrison and Others* in the Supreme Court, was not an adjudication against the defendant in respect to the controversy in this action, and the trial court erred in admitting the record in evidence and in its decision as to the matter adjudicated therein and the effect of such adjudication. (*Cauhape* v. *Park*, 121 N. Y. 152; *Stannard* v. *Hubbell*, 123 id. 520; *Springer* v. *Bien*, 128 id. 99; *Bell* v. *Merrifield*, 109 id. 202, 211; *Lewis* v. *O. N. Co.*, 125 id. 341, 348.) In view of the uncontradicted evidence that the character of the neighborhood had been changed, and that it had been converted from a locality of first-class residences into a locality of miscellaneous business, and of other undisputed facts before referred to, the plaintiff was not entitled to any equitable relief. (*Columbia College* v. *Lynch*, 70 N. Y. 440, 446, 453; *Columbia College* v. *Thacher*, 87 id. 311; *Amerman* v. *Deane*, 132 id. 355.) The court erred in overruling defendant's proposed findings of fact relating to the past history and the present condition of the neighborhood. (*Conger* v. *N. Y., W. S. & B. R. R. Co.*, 120 N. Y. 29; *Fitzpatrick* v. *Dorland*, 27 Hun, 291.) The order made by the court after the judgment, and on August 8, 1891, does not affect this appellant, or bear, in any respect, upon this appeal. (*Stannard* v. *Hubbell*, 123 N. Y. 520; *Inchbald* v. *Robinson*, L. R. [4 Ch.] 388.)

*John L. Hill* for respondent. The covenant for restriction ran with the land, and was binding on all future owners

thereof. Miller's grants were subjected to these covenants by express clauses in his deeds, and he was estopped by the former judgment from raising any question as to the validity, force and effect of these restrictions as binding this property, both lots, down, at least to that time, *i. e.*, April 8, 1889. (*Trustees, etc.*, v. *Lynch*, 70 N. Y. 440 ; *Trustees, etc.*, v. *Thacher*, 87 id. 311 ; *Goebel* v. *Iffler*, 111 id. 177.) Independently of the effect of the former judgment the restrictions bound the land, and it was the duty of the court of equity to enforce them. (*Hodge* v. *Sloan*, 107 N. Y. 244.) So, too, the use of this Miller property, as proposed by this Taylor Company, so far, at least, as restrained by this injunction as finally modified, was plainly a violation of this restriction. It was a trade or business which was both offensive and injurious. (*In re Wrigley*, 8 Wend. 140 ; *Bell* v. *Pierce*, 48 Barb. 51 ; *In re Hughes*, 1 Tuck. 38 ; 20 Johns. 208 ; 19 Wend. 11 ; 16 How. Pr. 77 ; 2 Abb. Pr. 454.)

Earl, J. The main contention of the parties is over the meaning and force of the restriction agreement. The claim of the appellant that it simply restrains nuisances cannot be sustained, and hence the numerous authorities cited by his counsel on the argument before us, have little or no application. If the agreement was intended simply to restrain any trade or business which was *per se* a nuisance, or which was carried on in such a way as to make it a nuisance, then it was wholly unnecessary. The law will always, upon the application of a party aggrieved, restrain and abate a private nuisance. This case is not governed by the general law as to nuisances, but by the force and effect of the covenants contained in the agreement.

When the agreement was made, the parties thereto, desiring to improve, protect and benefit their lots, and consulting their respective interests, absolutely prohibited the carrying on of certain kinds of business specified upon the lots. They determined for themselves that those kinds of business were undesirable in the vicinity of residences, and covenants restraining

them can be enforced without any proof whatever that they are "injurious or offensive." A person owning a body of land and selling a portion thereof, may, for the benefit of his remaining land, impose any restrictions, not against public policy, upon the land granted he sees fit, and a court of equity will generally enforce them. (*Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440; *Same* v. *Thacher*, 87 id. 311; *Hodge* v. *Sloan*, 107 id. 244.)

The business carried on by the Taylor Company is not among those kinds particularly specified in the agreement. But the claim of the plaintiff is that it is prohibited by the general clause in the agreement as "injurious or offensive to the neighboring inhabitants." This clause enlarges the scope of the agreement. It is a too narrow construction to hold that it prohibits only trades or kinds of business which are nuisances *per se*, for reasons already given and for the further reason that nearly if not quite all the trades and business specially named are not such nuisances. Any kind of business may become a nuisance by the manner in which it is carried on, or from its location, and a business may be offensive to neighboring inhabitants and yet fall far short of being a legal nuisance, which a court of equity will abate as such.

This clause in the agreement must have a reasonable construction. We cannot suppose that the parties had in mind any business which might be offensive to a person of a super-sensitive organization, or to one of a peculiar and abnormal temperament, or to the small class of persons who are generally annoyed by sights, sounds and objects not offensive to other people. They undoubtedly had in mind ordinary, normal people, and meant to prohibit trades and business which would be offensive to people generally, and would thus render the neighborhood to such people undesirable as a place of residence.

It cannot be doubted that the business of the Taylor Company was, within this definition, offensive to the neighboring residents. People of ordinary sensibilities would not willingly live next to a lot upon which such a business is carried on.

An ordinary person desiring to rent such a house as plaintiff's would not take her house if he could get one just like it at the same rent at some other suitable and convenient place. Indeed, her house would be shunned by people generally who could afford to live in such an expensive house.

The courts can take judicial notice of the offensive character of such a business. Judges must be supposed to be acquainted with the ordinary sentiments, feelings and sensibilities of the people among whom they live, and hence in this case the learned judge, after the character of the business carried on by the Taylor Company had been proved, could have found, as matter of law, that it was in violation of the restriction agreement, without any further proof. It was, therefore, unnecessary for the plaintiff upon the trial to call witnesses from the neighborhood to give their opinions that this business was injurious and offensive. Even if such opinions were erroneously received, they were unnecessary and harmless, as upon the undisputed evidence as to the character of the business carried on the legal conclusion of the trial judge must have been the same.

But it is contended that the restriction agreement ought not in this case to be enforced, because most of the lots in the block between 42d and 43d streets and Madison avenue and Vanderbilt avenue are no longer occupied for residences, and are devoted to business purposes, and the counsel for the appellant cites as an authority on this point our decision in the case of *The Trustees of Columbia College* v. *Thacher*. The principles of that case are not applicable to the facts of this. There it appeared that the contract which the plaintiff sought to enforce was no longer of any value to it, and that its enforcement would result in great damage to the defendant, without any benefit to anyone. Here the plaintiff has the right to occupy her house as a residence, and in such occupation to have the protection of the restriction agreement. She has never violated the agreement herself, or consented to or authorized or encouraged its violation by others. In order to have the benefit of the agreement, she is not obliged to sue all its

violators at once. She may proceed against them *seriatim*, or she may take no notice of the violations of the agreement by business carried on remotely from her residence, and enforce it against a business specially offensive to her by its proximity. This is not a case where the defendants can ask for immunity in an equitable forum, because others are in a greater or less degree also violators of the agreement. The plaintiff has done nothing and omitted nothing which should authorize the occupant of an adjoining lot, in violation of the agreement, to make her residence uncomfortable and undesirable. Generally, whether an equity court will refuse to restrain the violation of such an agreement, and leave the parties to their legal remedies on account of the changed conditions affecting the premises to which the agreement relates, rests in the discretion of that court, and such discretion will not be reviewed upon appeal here. The question to be determined in the exercise of such discretion depends largely upon the facts, and mainly whether the enforcement of the agreement would greatly harm the defendant without any substantial benefit to the plaintiff, so as to make the enforcement inequitable. We cannot say, reviewing all the evidence in this case, that it would be inequitable for the plaintiff to enforce the agreement.

The appellant claims that the judgment is too broad in its restraints. But we think all his rights are fully protected by the sixth clause of the judgment, and the subsequent action of the court under that clause upon the application of the Taylor Company.

The matters to which we have thus given attention cover the whole ground of the appeal, and our conclusion is, that the judgment must be affirmed, with costs.

All concur, except GRAY, J., not voting.

Judgment affirmed.