### HERMINA RUSSELL v. OLIVER P. HARPEL.

**1. BUILDING RESTRICTIONS BINDING ON GRANTEES.**

Building restrictions whereby grantees are prohibited from the erection of houses within twenty feet of the street, are valid and a grantor is bound thereby if his grantee's deed contains such a covenant although his own deed contains no such restriction.

**2. ENFORCEMENT SOMEWHAT DISCRETIONARY.**

The enforcement of building restrictions in deeds is somewhat a matter of discretion with the courts. If the neighborhood has so changed that a building restriction has become valueless to property owners, equity will not enforce it.

**3. EQUITY REQUIRES DILIGENCE.**

Equity requires diligence in this class of cases and acquiescence in a violation of the covenant is sufficient to defeat the application, since every relaxation permitted amounts, *pro tanto*, to a disaffirmance of the obligation.

**4. RULES APPLIED — ENFORCEMENT REFUSED.**

Under these rules an injunction should not be granted in favor of a property owner who has permitted an adjoining house to be erected less than twenty feet from the street in violation of the building restriction, and who has also permitted, without objection, sixteen other houses in the same block to be erected in violation of such restriction, especially where it appears that the adjoining lot owner sought to be enjoined has already expended several hundred dollars on a dwelling erected within the terms of the building restriction except in that its porch and bay window are less than twenty feet from the street.

APPEAL from the Court of Common Pleas of Lucas County.

HULL, J.

This case comes into this court on appeal from the common pleas court. It is an action for an injunction against the defendant. In her petition plaintiff claims that she is the owner of a certain lot in what is called the second extension of the fair ground addition to the city of Toledo, being lot No. 720, fronting on Lincoln avenue; that she acquired her title from Robert McCasky; that the defendant is the owner of the abjoining lot on said avenue; that this property was all held originally and prior to the time of the title to these lots being acquired by the plaintiff and defendant, by John R. B. Ransom, who made the deeds of it to different parties including McCasky, plaintiff's grantor, and Mr. E. W. Tolerton, from whom the defendant acquired his title. That in those deeds there are restrictions in regard to the building of houses on the lots on Lincoln avenue nearer than twenty feet from said street. The restriction in the deed from McCasky to the plaintiff is in the following language:

"No residence or dwelling house or other building shall at any time within said period of ten years be erected or built wholly or partly on the property herein conveyed, nearer to the street line than twenty feet or costing less than $1,000.00 exclusive of all other buildings and improvements upon each and every lot herein conveyed. Each and all the conditions and covenants aforesaid shall run with and bind the land

hereby conveyed and every part thereof and be binding upon persons who shall be the owners thereof during the said period of ten years. By accepting this deed the said party of the second part hereby binds himself, his heir, executors, administrators and assigns, to observe all the conditions hereinbefore mentioned as fully as though he himself and they themselves had signed these presents."

The plaintiff claims that the defendant is bound also by this same restriction, although in the deed conveying defendant's lot to him there is no such restriction, that being a warranty deed from Mr. Tolerton, who derived his title from Ransom, the common grantor, but there being the same restriction in the deed from Ransom to Mr. Tolerton that there is in the·deed of plaintiff. The plaintiff claims that the defendant was, at the time of the commencement of this action, building a house on the adjoining lot, to-wit, lot No. 721, on Lincoln avenue; that portions of this house are within ten feet of the street; that a bay-window on it is within about fifteen feet of the street—the part within ten feet being the porch. , The body of the house itself, that is the foundation wall, is not nearer than twenty feet from the street. The action was commenced by the plaintiff in November last, and at that time the house of defendant was partially constructed; the excavation had been made, the foundation walls were up, the studding and some of the siding, and perhaps it was all covered with the roof-boards. The shingles were not on, but some other things had been done towards the construction of the house, several hundred dollars having been expended in that direction.

The defendant claims that the plaintiff stood by and permitted him to begin the construction of this house and carry it forward and that it would be inequitable now to enjoin him and require him to move the house back to the twenty-foot line.

This action came before this court first at the last term, on a motion to suspend the order of the court of common pleas overruling a motion to dissolve the temporary injunction, and this motion was granted by the court, the testimony upon that hearing showing that it would be impossible in any event for the house to be moved in the condition it was in then;—that, if it was to be moved at all, it would be necessary to carry the house further on towards completion than it then was, and since that time the work has progressed to some extent toward the completion of the house.

The defendant claims further, that the plaintiff being the owner of this lot and interested in this restriction along with others, permitted, without objection, other houses to be built upon this street nearer than twenty feet from the street and permitted a house to be built upon the other side of her lot within only about fourteen feet from the street, and that for that reason it would be inequitable now to enforce, by mandatory injunction, this restriction against this defendant. There was considerable testimony offered in the trial and the case was very fully argued.

Such restrictions as this one have been upheld generally by the courts as a valid restriction, one which the owners of the property have a right to agree upon, and if such a restriction is made, it is generally held that the grantee to a deed containing such a covenant is bound by it, and that the grantee is bound if his grantor's deed contains such a restriction such is the weight of authority.

It seems that this property was originally held in trust by Mr. Ransom, for McCasky, Tolerton and others, including Ransom himself,

the property having been purchased along in 1895 and the title taken by Mr. Ransom in trust for these other parties. This property was platted, having been included in a larger tract, and a large number of lots sold and conveyances made by Ransom; and finally, in 1898 or 1899, the lots which were left unsold were partitioned between the real owners, deeds being made by Ransom to them, and a deed of lot 721 was made to Mr. Tolerton in 1899.

Mr. Tolerton was a witness here, and, although the deed by Ransom to him contains this same restriction, he testified that he had no knowledge of it at the time the deed was delivered to him; that he had never been consulted; that he had never agreed to such a restriction and did not know there was such a restriction in his deed until about the time this action was commenced. The defendant got his deed from Mr. Tolerton in July, 1899, and soon after that time commenced the construction of this house—in the following month. It is a frame house and was intended to cost about $2,500. According to the testimony, at the time defendant began the construction of his house he had no actual knowledge that there was any such restriction in the deed of his grantor, Mr. Tolerton, there being none in the deed made to defendant by Mr. Tolerton. Some time after he had started the house, he was told, by a man who was working for him, that he had heard there was some such restriction in the deeds, but he had no actual knowledge of it until about the time of the commencement of this action, when he was interviewed by the attorney for the plaintiff. At that time, the house being in the condition heretofore stated, he had expended several hundred dollars upon it in doing the work of construction.

The plaintiff, according to the testimony, contained in her deposition, lives about six blocks away from this house. She saw the house going up, soon after it was started — only living that distance away — but she was not on the street and testifies that she did not know that the house was within the prescribed line until a short time before this action was commenced. She did know, however, that the house was going up, being built upon this lot. The testimony shows that after the plaintiff purchased her lot, in 1897, a house was built on the other side of her lot, only fourteen feet from the street line, and that the plaintiff made no objection in any way to the building of that house. According to the testimony there are only two of the eighteen houses in this block on Lincoln avenue that are within the twenty-foot limit : one is thirteen feet from the street; another sixteen feet; one seventeen, another sixteen feet and ten inches and the house on the other side of plaintiff's lot is fourteen feet and one inch, and the others at different distances from the street, and only two of them, according to the testimony, are twenty feet from the street; and this means the body of the house itself, not porches or projections. So it appears from the testimony that so far as this block is concerned, on Lincoln avenue, this twenty-foot restriction has been practically disregarded by the persons building houses in the block and, until this action was commenced, no objection was made by the plaintiff to the construction of a house in this block less than twenty feet from the street line, although sixteen houses had been so built.

Prior to the commencement of this action, an action had been commenced by a Mr. Sterling, to enjoin the defendant from the construction of this house and for a mandatory writ requiring him to move it. Mr. Sterling owned a lot on the other side of the defendant's lot. But

that injunction was dissolved by the court of common pleas because Mr. Sterling's house was less than twenty feet from the street line and he could not be heard to complain.   Soon after that this action was commenced by the plaintiff.

Under this state of facts, ought a court of equity to enjoin this defendant, on the application of this plaintiff, from continuing the construction of this house and to require him, by a mandatory writ to remove what he has constructed?   The house itself is twenty feet from the street line but the porch and bay window are nearer to the street.

From an examination of the authorities that have been cited by counsel, we conclude that it is somewhat a matter of discretion with a court of equity whether a restriction of this kind be enforced in favor of a particular person who is affected thereby, or not; that, if the nature of the neighborhood has so changed that the restriction has become to a great extent valueless to the owners of the property there, it may not, in the exercise of this discretion, be enforced by a court of equity.   A contract will not be required to be specifically performed by a court of equity where such performance would be inequitable or unconscionable.

The case of Rowland v. Miller, 139 N. Y., 93, is cited by the plaintiff, and the restriction in it was against certain businesses and occupations being carried on upon the property.   The court say, on page 102 :

"It cannot be doubted that the business of the Taylor company was, with this definition, offensive to the neighboring residents.   People of ordinary sensibilities would not willingly live next to a lot upon which such a business was carried on."

The violation of the covenant in this case was the use of a building for an undertaking establishment, and one of the rooms was used for the dissection of dead bodies ; and it is held that under the restriction in that case plaintiff was entitled to an injunction.   The court say, on page 103, referring to the plaintiff :

"She has never violated the agreement herself, or consented to or authorized or encouraged its violation by others.   In order to have the benefit of the agreement she is not obliged to sue all its violators at once.  She may proceed against them *seriatum*, or she may take no notice of the violations of the agreement by business carried on remotely from her residence, and enforce it against a business specially offensive to her by its proximity."

In the case at bar, plaintiff permitted a house to be constructed upon the other side of this lot, adjoining her lot, only fourteen feet from the street line.  It is not a case like Roland v. Miller, *supra*, where it may be said that the plaintiff herself has not permitted any one else to violate this agreement; but, without objection, she permitted this house to be constructed within that distance from the street, and, without objection, has permitted sixteen houses to be constructed in this block nearer than twenty feet from the street.

The case cited by counsel for the plaintiff, Isham v. Matchett, 10 Circ. Dec., 267, a decision of the circuit court of Cuyahoga county, we do not think is decisive in any respect of the question involved here.  In that case there was a restriction against the construction of certain buildings upon certain property.   The first paragraph of the syllabus is :

"A restriction in a deed of a city lot, providing that there shall be no buildings erected on the property costing less than a certain sum,

applies to all buildings which will front on a street or will come so near the street as to constitute a building upon the street."

The defendant in that case built a barn within seventeen feet of the street and made preparation to have the filth from the barn deposited in front thereof, and this upon a residence street, and he was enjoined by the circuit court of Cuyahoga county and ordered to remove the barn. Possibly he might have been enjoined without any restriction whatever in his deed.

Trustees, etc. v. Thatcher, 87 N. Y., 311 discusses quite fully this question of restrictions of this character. The court say, in the first paragraph of the syllabus:

" While a court of equity has jurisdiction to enforce the observance of covenants made by an owner of lands in a city with an adjoining owner, in consideration of similar reciprocal covenants on the part of the latter, restricting the use of the lands to the purposes of private residences, the exercise of this authority is within its discretion; and where there has been such a change in the character of the neighborhood as to defeat the objects and purposes of the agreement, and to render it inequitable to deprive such owner of the privilege of conforming his property to that character, such relief will not be granted.

And the question is fully discussed in the opinion of the court.

The court say, on page 317:

" It certainly is not the doctrine of the courts of equity, to enforce, by its peculiar mandate, every contract, in all cases, even where specific execution is found to be its legal intention and effect. It gives or withholds such decree according to its discretion, in view of the circumstances of the case and the plaintiff's prayer for relief is not answered, where, under those circumstances, the relief he seeks would be inequitable."

Amerman v. Deane, 132 N. Y., 355, lays down the same doctrine in similar language. The court say in the first paragraph of the syllabus:

" Where the owner of lands in a city has laid it out into lots, which are sold to different purchasers, each conveyance containing covenants on the part of the grantee running with the land restricting the use thereof to the purposes of a private residence, or prohibiting the erection thereon of certain specified structures, while a court of equity has power to enforce the performance of these covenants, the exercise of this authority is within its discretion, and where there has been such a change in the character of the neighborhood as to defeat the objects and purposes of the covenants and to render it inequitable to deprive a grantee or his successors in title of the privilege of conforming his property to that character, such relief will not be granted, and in lieu thereof damages may be allowed."

And the court say, on pages 359 and 360:

" In High on Injunctions (sec. 22), it is said, if it is apparent upon an application for an injunction, that the relief sought is disproportioned to the nature and extent of the injury sustained, or likely to be sustained, the court will decline to interfere. And again at section 1158, where the character and condition of the adjoining lands, with reference to that conveyed, have so changed as to render the restriction in the conveyance inapplicable, according to its true intent and spirit, a court of equity will not interfere by injunction to prevent a breach of the covenant, but will leave the party aggrieved to his remedy at law."

Also Orne v. Friedenberg, 143 Pa. St., 487, where the Supreme Court of Pennsylvania say, in the syllabus:

"Plaintiff filed a bill for a mandatory injunction' restraining the maintenance of certain structures upon an adjoining lot, in violation of restrictive conditions imposed on a conveyance of defendant's lot in 1825. All the structures complained of were in full view upon the lot for many years before the bill was filed:

"1. A chancellor does not interfere by way of mandatory injunction, even though the injury be clearly established, when there has been long continued delay in asserting the right, and a remedy exists at law; wherefore the laches of the plaintiff defeated his right to the relief by injunction asked for."

"2. Moreover, there has been such a change of surroundings in the neighborhood, in the character of the improvements, and in the purposes to which they were applied, as might well have been deemed sufficient to justify a chancellor in refusing to restrain the violation of building restrictions such as were complained of.

"3. The plaintiff might have brought his action at law, or he might, as he did, file his bill for an injunction. While, for the reasons given, he was not entitled to an injunction, he may still sue at law and recover damages, if he can show he has sustained any."

The question is discussed in High on Injunctions, secs. 1158 and 1159, and the general law laid down substantially as it is in these cases to which have been cited. Section 1158 reads as follows:

"To warrant relief by injunction in the case of a covenant restricting erections upon the premises conveyed, it is not essential that the plaintiff should show any actual damage resulting from the breach of covenant of which he complains, and if a clear breach be shown equity may interpose its preventive aid regardless of the question of damage, since the covenantee is entitled to the benefit of his covenant. And in such a case, the purchaser having erected buildings beyond a line fixed by the covenant, it is proper to grant the injunction in a mandatory form. So, too, the jurisdiction may be exercised to prevent the breach of negative covenants on the part of the vendor of real estate. Thus, where the vendor has covenanted in the conveyance not to erect or permit the erection of any buildings on his premises in front of those conveyed, the erection of buildings in violation of the terms of the agreement will be enjoined. Where, however, the title of the feoffor, or of those deriving their title under him, have so changed the character and condition of the adjoining lands, with reference to that conveyed, as to render the restriction in the conveyance inapplicable according to its true intent and spirit, a court of equity will not interfere by injunction to prevent a breach of the covenant, but will leave the party aggrieved to his remedy at law.

Also a portion of sec. 1159, as follows:

"In considering applications for relief by injunction against the breach of restrictive covenants contained in conveyances of real property the courts require due diligence upon the part of the plaintiff seeking the relief, and laches or acquiescence on his part in the violation of the restrictive covenant will ordinarily defeat his application. Indeed, equity requires the utmost diligence, in this class of cases, upon the part of him who invokes its preventive aid, and a slight degree of acquiescence is sufficient to defeat the application, since every relaxation which plaintiff permits in allowing erections to be made in violation of the covenant amounts, *pro tanto*, to a disaffirmance of the obligation.

This being the law as we gather it from the authorities, it seems to us that the plaintiff here ought not to be granted the relief which she asks in this petition. Having permitted a house on the other side of this lot to be erected within fourteen feet of the street and having permitted, without objection, sixteen houses in this block to be erected nearer to the street than twenty feet, we think it would be unjust and inequitable and unconscionable to now permit her to enjoin this defendant from building his house, under all these circumstances, any nearer to the street than twenty feet. The house on the other side of the plaintiff's lot being out to within fourteen feet of the street, for defendant to properly enjoy his lot, it is necessary for him to bring his house out to some extent.

More than that, it appears to us from the evidence in the case, that there is some question at least about the good faith of the plaintiff in this action. After Mr. Sterling had been denied an injunction, then this suit was commenced. The plaintiff seems to have taken no interest in the matter until that time and the petition seems to have been prepared for her to sign and file without any action on her part, and the evidence and the circumstances of the case tend pretty strongly to show that Mr. Sterling is the real party in interest in this action. If that be true, this plaintiff would not be entitled to any relief, that Sterling was not entitled to. The injunction must be denied and the plaintiff's petition dismissed at the cost of the plaintiff.

*Ray & Cordill*, for the plaintiff.

*Longwell & Ramsey*, for the defendant.