The plaintiff is the owner of lot No. 5 of Block C in the Hayes Subdivision, West Asheville Addition, Asheville, N.C. The defendant is *Page 75 
the owner of lot No. 4 and part of lot No. 40. Both of said lots of land front of Haywood Road. In both deeds there are restrictions against the erection of any "commercial or manufacturing establishment, or factory, or tenement, or apartment house, or house or building to be used as a sanatorium or hospital, or allow at anytime any buildings erected thereon for any such purpose." It is alleged in the complaint and admitted in the answer that the defendant is now proposing to erect upon his property a building which is in violation of the restrictions set forth in the deeds under which the parties hold title, but it is alleged that said restrictions are not binding and enforceable.
The controversy was heard by Judge Shaw, who found the facts and rendered judgment as follows:
"This cause coming on to be heard at this the May Term, 1927, of Superior Court of Buncombe County, upon the complaint and answer of the defendant filed herein, and upon the other evidence which is of record, and the argument of counsel, the court finds as a fact that the plaintiffs L.D. Starkey and wife are the owners of the lands described in the complaint, and the defendant Frances L. Gardner is the owner of the land and lots situate on Haywood Road, described in the complaint and answer.
"The court further finds as a fact that about twelve years prior to the institution of this action that the defendant purchased the lands, as alleged in the complaint and answer, which lands, owned by R. P. Hayes and wife, Lucy P. Hayes, referred to in the plat described in the pleadings, were subdivided and the restrictions placed in the deeds of the purchasers, as set out in said complaint and admitted in the answer; and that said lands, so divided and sold, fronting on Haywood Road, a thoroughfare within the corporate limits of the city of Asheville, and when said lands were so platted that the same fronted on said Haywood Road, which was then a macadamized road, and was not of any value upon which to establish business houses or buildings, but was then only valuable for residential purposes.
"The court further finds as a fact that said Haywood Road is now a thoroughfare, paved, and has sidewalks abutting thereon, water and sewer lines, and that upon said road on which there were no business houses (stores, drug stores, banks, or others business buildings) at the time of the planting and sale of said lots fronting and abutting on said Haywood Road; but since said time, to wit, within the last seven to eight years, there have been constructed upon said road, and in close proximity to the property of the defendant herein, store buildings, drug store buildings, garages, automobile sales, and other business houses on said Haywood Road, and on either side of defendant's property, and the property referred to in said plat, and there have been constructed business houses, *Page 76 
banks, and other buildings of such nature and kind that the said Haywood Road, on which the property of the defendant is abutting, and other property described in the Hayes plat, which has restrictions written into the deeds of the purchasers of the said subdivision, is valuable as business property, and that its value as business property is worth at least one hundred per cent more than its value as residential property.
"And the court further finds from the affidavits herein that more than four-fifths of the owners of the lots in said subdivision, both fronting on Haywood Road and lateral streets and remote location, have joined with the defendant herein and ask that the restrictions herein be removed from the property referred to in the deed or deeds from R. P. Hayes and wife to the defendant, and all other owners and purchasers of said lots fronting on said Haywood Road.
"And the court further finds as a fact that it is inequitable and unjust to require the enforcement of the restrictions, for that the conditions for which said restrictions were placed in said deeds to the owners of the property situate on Haywood Road is not beneficial to the property described in said subdivision, but, on the contrary, is detrimental and injurious to the market value of said property, and that if said restrictions are permitted to continue that it will retard the advancement and upbuilding of said property for business purposes on said Haywood Road: It is therefore ordered and adjudged that, by reason of the changed conditions aforesaid, the restrictions created in said deed from R. P. Hayes and wife, Lucy P. Hayes, referred to above, are no longer in effect, and that the property of the defendant described in said complaint is no longer subject to said restrictions, and that the application for injunction and restraining of the defendant, her agents or assigns, from building houses or business houses on her said property be and the same is hereby denied, and the said defendant, her agents or assigns, are not bound by the terms of said restrictions, and they are permitted to use said lands and property for any lawful purposes.
"It is further ordered that the plaintiff pay the costs of this action, to be taxed by the clerk."
From the foregoing judgment, the plaintiff appeal.
The question is this: Under what circumstances are restrictive covenants in deeds for property, originally devoted to residential purposes, rendered unenforceable?
There is no allegation in the complaint and no finding of fact by the trial judge that the Haywood Road property was the result of a general *Page 77 
plan or scheme other than the fact that the original deeds contained restrictions as set out in the deeds of the plaintiffs and the defendant.
The question of restrictive covenants in deeds covering property designed for residential purposes exclusively is becoming more and more an important and perplexing proposition. In all of the larger cities of the State suburban developments are multiplying and the popularity of these developments rests upon the assurance given purchasers that they may confidently rely upon the fact that the privacy of their homes will not be invaded by the encroachment of business, and that they may further be assured that the essential residential nature and character of the property will not be destroyed. Upon this assurance our citizens are daily erecting and constructing expensive and comfortable homes, away from the noise and stress of city life, and moreover, where they can secure larger home sites for their residences and more playing space for their children. The fundamental theory upon which these developments are founded is that of equality of burden and equality of privilege; that is to say, each property owner is entitled to the same privilege from the encroachment of undesirable buildings or enterprises, and therefore each property owner is subjected to the same burden or obligation of doing nothing or permitting nothing to be done to change the essential character of the community plan. This security and freedom ought not to be destroyed by slight departures from the original plan, guaranteed and safeguarded by the restrictive covenants in the deeds under which the property is held. Nor should a property owner be held to have waived his rights and to have abandoned the protection conferred upon him by such covenants by reason of disconnected and immaterial violations of the restrictions in the conveyances. This idea is expressed in Ward v. Prospect Manor Corp., 188 Wis. 534,206 N.W. 856: "It is now generally recognized by the overwhelming weight of authority in this country that an individual lot owner is not under penalty of waiving his right to the enforcement of a restrictive covenant by his failure to take notice of such violations as do not affect him."
The English rule is stated in Peek v. Matthews, L.R., 3 Eq., 515, 517, cited in the Ward case, supra, as follows: "If there is a general scheme for the benefit of a great number of persons, and then, either by permission or acquiescence, or by a long chain of things, the property has been either entirely or so substantially changed as that the whole character of the place or neighborhood has been altered so that the whole object for which the covenant was originally entered into must be considered to be at an end, then the covenantee is not allowed to come into court for the purpose merely of harassing and annoying some particular man where the court could see he was not doing it bona fide for the purpose of effecting the object for which the covenant was originally entered into." *Page 78 
However, it is equally true that if the character of the community has been changed by the expansion of a city and the spread of industry or other causes resulting in a substantial subversion or fundamental change in the essential character of the property, then, in such cases, equity will not rigidly enforce the restriction. In Ward v. Prospect Manor Corp., 206 N.W. 856, decided 12 January, 1926, the Supreme Court of Wisconsin said: "Courts of equity will not enforce such restrictive covenants, where the character of the neighborhood has so changed as to make it impossible to accomplish the purpose intended by such covenants. This may result from circumstances over which neither plaintiff nor defendant nor other resident of the community has any control. As in Rowland v. Miller, 139 N.Y. 93, 22 L.R.A., 182, 34 N.E. 765, where the erection of a steam railway and the construction of a station rendered the neighborhood, and especially the defendant's property, in front of which the station was erected, unfit for use for residential purposes to which it was intended to confine the restricted area. Such changed conditions may result from the natural growth of the city, bringing industry, smoke, soot, and traffic into such close proximity to the restricted area as to render it undesirable for the purposes to which it is restricted. Such changed condition may also result from a failure on the part of the property owners to observe or comply with the terms of the covenant. These violations may be so general as to indicate a purpose and intention on the part of the residents of the community to abandon the general scheme or purpose. Under such conditions, courts of equity will not enforce the covenant."
To the same effect is Ronberg v. Smith, 232 P. 283. In that case a tract of land consisting of forty acres, situate near the State University, was platted in 1906, and lots sold with the express purpose of making it a residential district. The deeds contained restrictions to the effect that the grantees for a period of twenty years should not erect "any flat, apartment, store, business, or manufacturing building," etc. It further appeared that during the last several years material changes had occurred in the district without objection. Eight duplex or apartment houses had been constructed, two restaurants were being operated in the district, and some fifteen or twenty fraternity houses had been built. The defendant had secured a permit to build two two-family houses upon his property, adjoining the property of plaintiff. Plaintiff was denied injunctive relief. The Court quotes with approval High on Injunctions, 4 ed., sec. 1159, as follows: "In considering applications for relief by injunction against the breach of restrictive covenants contained in conveyances of real property, the courts require due diligence upon the part of the plaintiff seeking the relief, and laches or acquiescence on his part in the violation of the restrictive covenant will *Page 79 
ordinarily defeat his application. Indeed, equity requires the utmost diligence, in this class of cases, upon the part of him who invokes its preventive aid, and a slight degree of acquiescence is sufficient to defeat the application, since every relaxation which plaintiff permits in allowing erections to be made in violation of the covenant amounts, pro tanto, to a disaffirmance of the obligation."
The Supreme Court of Illinois, in Ewertsen v. Gerstenberg, 57 N.E. 1051, 51 L.R.A., 310, also held: "Equity will not, as a rule, enforce a restriction where, by the acts of the grantor who imposed it, or of those who derived title under him, the property, and that in the vicinage, has so changed in its character and environment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant relief would be a great hardship on the owner and of no benefit to the complainant, or where the complainant has waived or abandoned the restriction, or, in short, it may be said that where, from all of the evidence, it appears that it would be against equity to enforce the restriction by injunction, relief will be denied, and the party seeking its enforcement will be left to whatever remedy he may have at law." 27 R. C.L., secs. 536, 537, 538, and 540. Stevenson v.Spivey, 110 S.E. 367; 21 A.L.R., 1276, and note; Tiffany Real Property, sec. ed., vol. 2, pp. 1456-1458.
This Court has not decided the question involved in this appeal. The only intimation contained in our law occurs in Bailey v. Jackson,191 N.C. 61, in these words: "There is highly respectable authority for the position that a restriction of this kind is not necessarily void because it purports to be perpetual, though it is not impossible that conditions may arise which would impel a relaxation of the rule." Citing 18 C. J., 401.
The weight of authority is to the effect that if substantial, radical and fundamental changes have taken place in a development protected by restrictive covenants that courts of equity will not enforce the restriction. The underlying reason is, we apprehend, that such changes destroy the uniformity of the plan and the equal protection of the restriction. For instance, if a residential development should, in the course of time, by the growth of a city or other cause, become valuable as business property and business houses should indiscriminately invade the development, then the restriction would bear unequally upon the various owners and equity would not permit the entrenching of such inequality.
In our case, the court finds as follows: "The court further finds as a fact that said Haywood Road is now a thoroughfare, paved, and has sidewalks abutting thereon, water and sewer lines, and that upon said road on which there were no business houses (stores, drug stores, banks or other business buildings) at the time of the platting and sale of said lots fronting and abutting on said Haywood Road; but since said time, *Page 80 
to wit, within the last seven to eight years, there have been constructed upon said road, and in close proximity to the property of the defendant herein, store buildings, drug-store buildings, garages, automobile sales, and the other business houses on said Haywood Road and on either side of defendant's property, and the property referred to in said plat, and there have been constructed business houses, banks, and other buildings of such nature and kind that the said Haywood Road on which the property of the defendant is abutting, and other property described in the Hayes plat, which has restrictions written into the deeds of the purchasers of the said subdivision, is valuable as business property, and that its value as business property is worth at least one hundred per cent more than its value as residential property.
And the court further finds from the affidavits herein that more than four-fifths of the owners of the lots in said subdivision, both fronting on Haywood Road and lateral streets and remote location, have joined with the defendant herein and ask that the restrictions herein be removed from the property referred to in the deed or deeds from R. P. Hayes and wife to the defendant, and all other owners and purchasers of said lots fronting on said Haywood Road."
Upon the findings of the trial judge three outstanding facts appear: First, that the property affected by the restrictions has undergone a total change, in that Haywood Road has become business property instead of residential property. Second, that more than eighty per cent of all the owners of the property affected have waived or abandoned the restrictions contained in the deeds. Third, that the restrictive covenants are not beneficial to the property described in the subdivision, but on the contrary are detrimental and injurious.
Applying, therefore, the established principles of law to these predominant facts, we hold that, upon the record as presented, the judgment of the court was correct.
Affirmed.