This is an action for specific performance of a contract of lease. The plaintiff is the owner of Lot 9 and a part of Lot 10 in the Crescent Heights Subdivision, a real estate development made by Elizabeth Realty Company in 1909, the locus in quo being situated on the northwest corner of Providence Road and Cherokee Road (formerly Vail Avenue). The plaintiff and defendant have entered into a contract wherein the plaintiff agrees to lease the locus in quo to the defendant for a term of five years for the purpose of constructing and operating a filling station thereon, and the defendant agrees to pay the plaintiff $150.00 per month rent therefor for said purpose. The plaintiff has tendered to the defendant a lease in accord with said contract, but the defendant has declined and refused to accept same or to pay any rent.
The defendant bases his refusal to comply with the terms of the contract upon the contention that the plaintiff cannot make a valid contract for the rental of the locus in quo as a site for the construction and operation of a filling station. There appears in defendant's brief the following: "The defendant concedes that plaintiff is entitled to specific performance of the contract entered into between the parties, and also the contract of lease tendered to the defendant by plaintiff, provided the defendant can use the locus in quo for the purposes set forth in the contract, to wit: a gasoline filling station or other lawful business purpose; otherwise defendant denies that he is liable in any manner to the plaintiff by reason of having executed said contract."
The plaintiff alleges and the defendant admits that:
"2. That the plaintiff is the owner in fee simple of a certain lot in the city of Charlotte, located on the northwest corner of Providence Road and Cherokee Road, as shown and described in Book 930, page 153, in the office of the register of deeds for Mecklenburg County, N.C.
"3. That certain restrictions were placed on said lot in 1909, and that said lot was deeded by Elizabeth Realty Company to J. F. Shannon and wife, on 28 May, 1914, as shown by a deed recorded in Book 325, page 203, which said restrictions were as follows: *Page 474 
"(a) The said lot shall never be owned or occupied by any person or persons of the Negro race or with Negro blood.
"(b) That no house shall be built upon the said lot nearer than 25 feet to the line of the said Vail Avenue.
"(c) That the said lot shall be used only for residential purposes.
"(d) That no house built on said lot shall cost less than $2,000, except the necessary outhouses in connection with the main dwelling house.
"4. That after mesne conveyances, said property was conveyed to O. J. Thies by deed recorded in Book 468, page 92, and Book 712, page 276, in said office of the Register of Deeds, and that said O. J. Thies and wife executed deed to the said property to S. J. Dunavant and wife, as shown by Book 898, page 297, in said register's office. That by said conveyance O. J. Thies undertook to add the following restrictions to the said locus inquo:
"(e) No houses shall be built upon said lots nearer than 15 feet to the line of Lot 11.
"(f) No outbuilding shall be built upon the said lots nearer than 90 feet of the line of Vail Avenue or Cherokee Road, or nearer than 75 feet of the line of Providence Road.
"That said additional restrictions were not in any manner a part of any uniform plan or scheme of development and are invalid, and that said S. J. Dunavant and wife conveyed said lot by deed recorded in Book 930, page 153, of the Mecklenburg Registry, to J. E. Elrod, plaintiff in this action, subject to all restrictions heretofore mentioned."
His Honor entered the following judgment:
"This cause coming on to be heard at the Extra 29 August, 1938, Term of the Superior Court of Mecklenburg County, and a jury trial having been waived by the parties, and it having been agreed that his Honor, Judge G. v. Cowper, holding said court, should hear said cause and decide the issues and questions of fact therein as well as those of law, and said cause having been heard by his Honor without a jury, as agreed by the parties, the court finds upon the evidence as follows:
"QUESTIONS OF FACT.
"1. That the plaintiff J. E. Elrod is the owner of the lot described in the complaint, and that said lot is situated in a subdivision developed by the Elizabeth Realty Company in the year 1909, plat of which appears of record in Map Book 230, page 24, in the Mecklenburg registry; that said restrictions were placed upon the said lot limiting it to use for residential purposes as set out in the complaint and admitted in the answer and that later additional restrictions were added to said lot in deed of *Page 475 
O. J. Thies and wife to S. J. Dunavant and wife; that at the time said land was originally developed, a large part thereof and plaintiff's lot in particular was far beyond the limits of the city of Charlotte and were sparsely settled. That the additional restrictions were no part of any general plan or scheme of any development.
"2. That the locus in quo, being at the extreme southern end thereof, is the most distant of any of the lots in the development from the business district of the city of Charlotte and fronts on Providence and Cherokee Roads; that at the time said land was developed, it was fit only for the residential purposes, the locus in quo being outside of the city limits and there being no other types of property except a few residences in the vicinity; that no structure of any kind has ever been erected on the plaintiff's lot.
"3. That about the year 1929, because of extensive growth, the city of Charlotte extended its limits and incorporated within its bounds all of said land, including plaintiff's lot and additional territory for more than a mile beyond; that both Providence and Cherokee Roads have been paved and Providence Road is a thoroughfare and a portion of the State Highway leading from Charlotte to Waxhaw; that both of said roads are heavily and constantly traveled both day and night by buses, automobiles and trucks; that directly across the street from the plaintiff's lot is a large gasoline filling station, and continuing therefrom for a distance of approximately half a mile south there is an almost unbroken business district; that on Providence Road north of plaintiff's lot within one block thereof, there is a large gasoline filling station and within two blocks north of the plaintiff's lot there is a large two-story store building, housing a beauty parlor, drug store, grocery store and dance hall; that a fire department substation has been erected within a block and a half east of plaintiff's lot, housing fire trucks, and that within 3 blocks of thelocus in quo a large super-grocery store is under construction; that within 3 blocks of and adjacent to plaintiff's lot there are 16 places of business, consisting of four large gasoline filling stations, a restaurant roadhouse, drug stores, barber shop, dry cleaning company, grocery stores, meat market, fire department substation, beauty parlor and dance hall, as shown by the plat.
"4. That as a consequence of the influx of business adjacent to and thickly surrounding plaintiff's lot, the value of the locus in quo as business property is at least 100 per cent more than its value as residential property; that the said community has, during the past 10 years, undergone a radical, substantial and fundamental change in its character, and there is ample evidence indicating further and more extensive construction of business houses in the said vicinity; that the restrictions placed on plaintiff's lot more than 28 years ago are of no value to the plaintiff *Page 476 
or any other lot owner in the development, but on the contrary constitute a distinct disadvantage on account of the encroachment of business houses surrounding said lot.
"5. That the changes heretofore enumerated in the use of the property in the vicinity of and adjacent to plaintiff's property and the growth and development of the city of Charlotte and the great increase in volume of travel and business and other nonresidential use of property in close proximity to the vicinity in which plaintiff's property is located, have so drastically altered the original nature of the plaintiff's property from its original character that the same is now wholly unfit and unsuitable for residential purposes, and more suitable for business purposes.
"6. That the plaintiff and defendant have entered into a valid, enforceable and binding contract for valuable consideration, whereby the defendant agreed to lease the plaintiff's said lot and pay the monthly rental stipulated therein, as set forth and attached to the plaintiff's complaint and admitted by the answer of the defendant; that the plaintiff has made proper tender of a written lease to the defendant, embodying the terms and agreements heretofore orally agreed to by said parties; that the defendants has refused to accept, be bound by and perform the terms of the said lease and that said contract is one that may be enforced and that the plaintiff is entitled to the specific performance thereof, and that unless said contract is performed by the defendant, the plaintiff will suffer irreparable loss and damage.
"LEGAL CONCLUSIONS.
"1. That because of the substantial changes hereinbefore enumerated which have taken place adjoining and in the vicinity of the locus in quo, since restrictions were placed thereon, said property has undergone such radical and fundamental alteration of character as to render it wholly unfit and unsuitable for use for residential purposes and that if the said property be now or further restricted to residential use only, it would work a great hardship upon the plaintiff and be of no consequential benefit to the owners of other property in the vicinity.
"2. That the restrictions placed upon the plaintiff's lot more than 28 years ago and also the more recent restrictions added thereto are detrimental and injurious and a distinct hindrance to the market value of said locus in quo and that if said restrictions are permitted to continue, it will retard the advancement and upbuilding of the high class suburban business district in said vicinity and deny the plaintiff the proper use and benefit of his said property.
"3. That the contract of lease entered into between plaintiff and defendant is a valid and binding lease, the same being entered into for *Page 477 
valuable consideration and that specific performance thereof is enforceable by law.
"Now therefore, upon motion of Frank W. Orr, attorney for plaintiff, it is considered, ordered and adjudged:
"1. That the restrictions heretofore existing upon plaintiff's lot as described in the complaint and also appearing of record in the chain of title, be and said restrictions are hereby declared null and void and said lot may be used for any lawful purpose.
"2. That defendant be and he is hereby required to specifically perform the contract of lease described in the complaint.
"3. That the defendant be taxed with the costs of this action.
"This 19 September, 1938."
From the judgment entered the defendant appealed, making "as his only assignment of error the judgment appearing in the record."
All of the findings of fact by the court are amply sustained by the evidence.
The question presented for our consideration is whether the findings of fact sustain the court's conclusions of law. We have two lines of decisions in this jurisdiction involving the circumstances under which restrictive covenants in deeds for property originally devoted to residential purposes are rendered unenforceable or are enforced. The leading cases where such restrictions were held unenforceable are Starkey v. Gardner, 194 N.C. 74, and Snyder v. Caldwell, 207 N.C. 626, and the leading cases wherein such restrictions are held enforceable are Johnston v. Garrett, 190 N.C. 835, and McLeskey v. Heinlein, 200 N.C. 290.
The defendant contends that the court erred in holding that restrictions in the deeds involved in the instant case were unenforceable for the reason that there is no evidence or finding of fact to the effect that there has been any substantial change in the use of the property within the boundary of the subdivision as originally laid out and restricted. While there may be some persuasive reasoning and authority for this contention, it is not compelling and we do not concur with the conclusion that such change is asine qua non to sustain the plaintiff's position. In Starkey v. Gardner,supra, it is said: "However, it is equally true that if the character of the community has been changed by the expansion of a city and the spread of industry or other causes resulting in a substantial subversion or fundamental change in the essential character of the property, then, in such cases, equity will not rigidly enforce the *Page 478 
restriction. In Ward v. Prospect Manor Corp., 206 N.W. 856, decided 12 January, 1926, the Supreme Court of Wisconsin said: `Courts of equity will not enforce such restrictive covenants where the character of the neighborhood has so changed as to make it impossible to accomplish the purpose intended by such covenants. This may result from circumstances over which neither plaintiff nor defendant nor other resident of the community has any control. As in Rowland v. Miller, 139 N.Y. 93, 22 L.R.A., 182,34 N.E. 765, where the erection of a steam railway and the construction of a station rendered the neighborhood, and especially the defendant's property, in front of which the station was erected, unfit for use for residential purposes to which it was intended to confine the restricted area. Such changed conditions may result from the natural growth of the city, bringing industry, smoke, soot, and traffic into such close proximity to the restricted area as to render it undesirable for the purposes to which it is restricted. . . .'"
We are of the opinion, and so hold, that the instant case is governed byStarkey v. Gardner, supra, and Snyder v. Caldwell, supra, and the judgment of the Superior Court is therefore
Affirmed.