ALTON W. FRANKLIN AND WIFE, DOROTHY G. FRANKLIN, AND R. P. LYON AND WIFE, RUTH LYON, v. ELIZABETH REALTY COMPANY, H. V. SHERRILL COMPANY, ED SMITH AND WIFE, WILLIE CAMPBELL SMITH, AND B. N. ANDREWS AND WIFE, DAISY ANDREWS.

(Filed 27 January, 1932.)

**1. Deeds and Conveyances C g—Development in this case held to have been laid out according to a general scheme or plan.**

Where a subdivision is sold into lots by deeds with covenants restricting the use of the land exclusively to dwellings, and the purchasers and their grantees, in reliance on these restrictions and in conformity therewith, build residences of the class designated with the belief and understanding that the restrictions would increase the value of the lots so purchased: *Held,* the plan is a general scheme and each purchaser under the restrictive covenants and warranties in his deed may restrain the building of a store for business purposes by an owner of a lot in the development, and the disregard of the restrictions in a very few instances to so slight an extent as not to materially affect the value of the other lots, under the facts of this case, will not vary the result.

**2. Same—Character of development had not so changed in this case as to warrant avoidance of restrictive covenants.**

Where lands are plotted into lots and sold with covenants restricting the buildings thereon to residences of a certain class and the purchasers have practically complied with the restrictive covenants in the deeds, the fact that business buildings were erected before these lots were so sold and conveyed on contiguous or adjoining blocks of the city will not alone be sufficient to show that business had extended to the lots with the restrictions and that therefore the restrictions should not equitably be enforced as to the owners of lots which had not yet been built on.

**3. Same—Restrictive covenants in this case held not rendered inoperative by subsequent clause in deed.**

Where lots in a development are sold and conveyed on a general plan restricting the class of buildings therein to residences, which restrictions have been practically observed, a purchaser of a lot in the development may not successfully contend that the general plan is varied by a further clause in the deed permitting a variation upon the mutual consent of the original grantor and subsequent purchasers under the provisions of the original deed in the development when no such variation has been made, as no harm has been suffered on account of this clause.

APPEAL by plaintiffs from *Harding, J.,* at April Regular Term, 1931, of MECKLENBURG. Affirmed.

This is a civil action brought by plaintiffs against defendants to remove cloud upon plaintiffs' title by virtue of certain restrictive covenants in the deeds under which plaintiffs held title. Plaintiffs pray: "That it be decreed that the restrictions set forth in the deed from Elizabeth Realty Company to H. C. Sherrill Company be declared to be null and void and of no force and effect, and that the plaintiffs be declared to be the owners of said property in fee simple, freed and discharged from said restrictions."

The Elizabeth Realty Company, established a subdivision of thirty-two lots on East Morehead Street in the city of Charlotte, N. C. On 8 March, 1924, by deed duly registered in Book of Deeds 534, p. 170, registry for Mecklenburg County, the defendant Elizabeth Realty Company conveyed to the defendant H. C. Sherrill Company said thirty-two lots with certain restrictive covenants and conditions, one of which is "The property shall be used for residential purposes only," etc. A map of the thirty-two lots, showing the size of the lots, etc., is recorded in Book 332, p. 90 register of deeds office of Mecklenburg County, N. C. All of the lots were sold with restrictions that "the property shall be used for residential purposes only," except one. The one not restricted by deed has a residence built on it in accordance with the restrictions. A further restriction: "No residence or dwelling-house shall be erected or occupied on said lot costing less than $7,500 (servants' house excepted)." The plaintiff, Dorothy G. Franklin, purchased from H. C. Sherrill Company. The other plaintiff, Dr. R. P. Lyon, is successor in title from H. C. Sherrill Company. In the deed above mentioned, from the Elizabeth Realty Company to H. C. Sherrill Company, is the following: "It is hereby understood and agreed by the parties hereto that all the foregoing covenants, conditions and restrictions shall run with the land and shall be held to bind the land and all subsequent owners or occupants thereof, and the acceptance of this deed shall have the same force and binding effect upon the party of the second part, its successors and assigns, as if said deed were signed by the party of the second part." All the deeds from the defendant, H. C. Sherrill Company, conveying various lots contain a clause substantially as follows: "This conveyance is made subject to the restrictions, conditions and reservations set forth in the aforesaid deed from Elizabeth Realty Company." Such is in plaintiffs' deeds.

The plaintiff Dorothy G. Franklin owns lot 4, in block 6 conveyed to her by H. C. Sherrill Company, by deed dated 14 July, 1928, and registered in Book of Deeds 713, page 69, registry for Mecklenburg

County, N. C. The other plaintiff, Dr. R. P. Lyon, owns lot 10 in block 5, conveyed to him by Coy E. Langford and wife, deed dated January, 1925, and registered in Book of Deeds 735, p. 77, registry aforesaid.

The plaintiffs contend: That since the date of the conveyance from the defendant Elizabeth Realty Company to the defendant, H. C. Sherrill Company above referred to, and since the dates of the conveyances from the H. C. Sherrill Company to the plaintiff, Dr. Lyon, successor in title, in this action above referred to, the character of the community in which the said lands are located has been materially changed by the expansion of the city of Charlotte and the spread of industry, causing a fundamental change in the essential character of the property herein referred to.

On the other hand, the defendants contend: That at the time the plaintiffs bought their lots every building on Morehead Street now used for business, about which they complain, except the filling station, was either in existence or in the process of construction, and some were occupied and in use. None that they complain of, or the filling station, is in the Elizabeth Realty Company development. That the Elizabeth Realty Company formerly owned the tract of land in which the plaintiffs' property is located; that, pursuant to a general plan to develop and sell that particular tract as high-class restricted residential property it made and recorded the map thereof recorded in Book 332 at page 90 in the office of the register of deeds for Mecklenburg County, N. C., on which map is shown the property of the plaintiffs and defendants; that 32 lots were shown on said map; and that, as appears from said map, the said restricted area extends from the intersection of Morehead Avenue and the street now known as Harding Place to the intersection of Morehead Avenue and Coddington Avenue. That, the said Elizabeth Realty Company thereafter, pursuant to said general plan, proceeded to sell said lots as shown on said map; that it has sold all or practically all of said lots; that in every deed except one it has inserted the identical restrictions set forth in the complaint; that in said one deed, which was to Chase Brenizer, an officer of the Elizabeth Realty Company, the said restrictions, through inadvertence, were omitted, but that shortly after the execution of said deed he erected upon said property a residence, conforming in all respects to said restrictions, which residence is now owned and occupied by P. C. Whitlock, and that all owners of said lots have fully observed the said restrictions; that all persons buying property in said restricted area, including the defendant, H. C. Sherrill Company, bought in reliance upon said restrictions and general plans; that only a very small percentage of said lots remain unimproved at this time; and that all of said lots, which have been improved, are used

solely for residential purposes, except the lot owned by this defendant, H. C. Sherrill Company, on which a residence has been constructed, but is being temporarily used by Miss Burbank. . . . That there has been no change in the character of the restricted area in which is located the property of the plaintiffs. That to eliminate said restrictions from the plaintiffs' said property, which is located in said restricted area and to permit the plaintiffs to use their said property for business purposes, as they are attempting to do, would violate said general plan and seriously and irreparably damage the property of the other owners in said restricted area.

Plaintiff, Dr. R. P. Lyon, testified, in part: "The other stores facing Morehead Street were then occupied. They were the same ones that are there today, but not the same occupants. It is a fact that every store which faces Morehead Street today was in existence at the time I bought my lot except the filling station. That was built after I bought my lot."

Plaintiff, Alton W. Franklin, testified, in part: "I selected this place because it was a high-class residential place and desirable for my business (photography). I knew that Morehead Street was a restricted area. I understood that everything east of Harding Place was unrestricted. I saw the store on the south side. Saw the cars going back and forth on Morehead Street, but nothing like they are now. All the business places except the Burbank place and the golf course are located east of Harding Place (not in the Elizabeth Realty Company development). . . . I knew the restrictions were there because Mr. Sherrill told me so and I took his word for it. I do not contend there is anything in the deed that was not there when I got it. . . . I was on good terms with Dr. Lyon after the suit was brought. Later on he put the miniature golf course on his lot. I objected to that in a way. I did not go to any one to make objection. . . . I didn't consider it a nuisance and I didn't try to stop him from putting it there. I never mentioned it to him."

Defendant B. N. Andrews testified, in part: My lot would be materially depreciated as much as 50 per cent if the restrictions were removed. The Franklin lot is lot 4, in block 6. The golf course is on lot 10, block 5. . . . I paid $3,000 for the lot and $9,500 or $10,000 for the house."

Mrs. John Moore testified, in part for defendant: That she lives in the Elizabeth Realty Company development, bought a lot in the spring of 1925, built and moved in it May, 1926. "When I bought the lot I knew it was restricted. . . . We liked the location and because it was restricted for residential property. . . . I think lifting the

restrictions on the Franklin and Lyon lots would depreciate the value of my lot considerably, because it would mean that the restrictions on the other lots would be lifted. . . . Miss Burbank has a very distinguished clientele. High class, high toned place, very orderly very attractive and the best of everything and she serves delicious food. She does not run a restaurant. . . . I went to a luncheon. It was exactly like luncheon in a private house."

W. S. Liddel testified, in part for defendants: "I constructed a brick-veneer house at a cost of from $25,000 to $27,000. The lot cost me $4,200. I moved in July, five or six years ago. I have lived there since." This house and lot are in the Elizabeth Realty Company development.

The judgment of the court below was as follows: "This cause coming on to be heard before his Honor, W. F. Harding, presiding judge, and a jury, 27 April, 1931, Regular Term of the Superior Court of Mecklenburg County, and having been heard, and each of the defendants having separately moved for a judgment of nonsuit at the close of the plaintiff's evidence, and these motions having been renewed at the close of all the evidence, and the court being of the opinion that the motion should be allowed: It is therefore, upon motion of H. L. Taylor, attorney for B. N. Andrews and wife, and of C. H. Gover, attorney for H. C. Sherrill Company and Elizabeth Realty Company, ordered, adjudged and decreed that the plaintiffs' action be and the same is hereby dismissed as of nonsuit, and that the plaintiffs be taxed with the costs." From the judgment as rendered, the plaintiffs excepted, assigned error and appealed to the Supreme Court.

*Shore & Townsend for plaintiffs.*
*C. H. Gover, H. L. Taylor and Chase Brenizer for defendants.*

CLARKSON, J. At the close of plaintiffs' evidence and at the close of all the evidence, the defendants moved for judgment as in case of nonsuit. C. S., 567. The court below allowed the motion at the close of all the evidence, and in this we can see no error.

What constitutes a general scheme or plan is stated in 27 R. C. L., under "Vendor and Purchaser," p. 766, part of sec. 531, as follows: "The cardinal test in determining whether a restriction imposed by a grantor in selling lots into which he has divided a tract of land is in pursuance of a general plan or neighborhood scheme has been said to be whether the grantor's representation as to the restriction is made for the purpose of inducing the purchasers of the several lots to pay higher prices by reason of the restriction and their mutual protection on such account. In practice, however, it is frequently difficult to determine

whether restrictions in the conveyance of several lots into which a large tract is subdivided were intended as a general restrictive plan or scheme for the benefit of the several grantees or merely for the personal benefit of the grantor. It has been held that the fact that a landowner has, in selling parts of a tract, imposed restrictions on the use of a number of lots does not itself necessarily show that a general restrictive plan or scheme was intended. And it has been held that a general plan or scheme for all the purchasers of lots on a street as platted does not appear from the fact that most of the lots are sold subject to building line restrictions, where no restrictions are shown on the plat and none are imposed on some of the lots first sold and it is further shown that there have been many violations of the restrictions by lot owners and such violations have not been resisted by other purchasers. On the other hand the fact that additional restrictions are incorporated in the conveyance of some of the lots does not show that a common restriction in all of the conveyances was not in pursuance of a general plan and consequently for the benefit of the several grantees. And there may be departure in a few instances in the sale of lots without restrictions without defeating what is otherwise an apparent general scheme of improvement."

We think under all the evidence that appears in this record, the Elizabeth Realty Company development was a general scheme or plan. *Johnston v. Garrett,* 190 N. C., 835; *Bailey v. Jackson,* 191 N. C., 61.

In *Johnston v. Garrett, supra,* at p. 838, the law is stated as follows: "The Stephens Company, the owner of the land platted as block 3-A, subdivided said block and sold distinct parcels thereof to separate grantees, imposing restrictions practically identical upon the use of each parcel or lot pursuant to a general plan of development or improvement; the lots now owned, respectively by plaintiffs and defendant, are included within block 3-A, and are held under deeds, containing practically identical conditions and restrictions, which the grantees in said deeds as recited therein understood and agreed were for the protection and general welfare of the community, and were covenants running with the land. These conditions and restrictions, upon these facts, may be enforced by any grantee of any of said lots, included within block 3-A, against any grantee of any other lot included in said block. 18 C. J., 394; *Homes Co. v. Falls, supra* (184 N. C., 426)."

That the omission of a restriction from a single deed does not destroy the general plan. *Bailey v. Jackson, supra;* 27 R. C. L., *supra.*

In *Starkey v. Gardner,* 194 N. C., at p. 79, *Brogden, J.,* clearly makes the following observations when equity takes a hand: "The weight of authority is to the effect that if substantial, radical and fundamental

changes have taken place in a development protected by restrictive covenants that courts of equity will not enforce the restrictions. The underlying reason is, we apprehend, that such changes destroy the uniformity of the plan and the equal protection of the restriction. For instance, if a residential development should, in the course of time, by the growth of a city or other cause, become valuable as business property and business houses should indiscriminately invade the development, then the restriction would bear unequally upon the various owners and equity would not permit the entrenching of such inequality." *Higgins v. Hough,* 195 N. C., 652; *Stroupe v. Truesdell,* 196 N. C., 303.

In *McLeskey v. Heinlein,* 200 N. C., at p. 292-3, it is said: "When persons desiring to become home owners purchase property in a subdivision protected by certain desirable restrictive covenants, *the security of such covenants ought not to be destroyed by slight departures from the original plan,* and valid restrictions appearing in all the deeds for lots in such subdivision should not be eliminated and wiped out because of immaterial violations of such restrictions. . . . *There is no fact tending to show any violation of the restriction within the subdivision itself,* except the fact that the owners of seven lots have signed releases in order to permit the owner of lot 13 to erect an art studio on said lot. The nature of such building does not appear. However, we are of the opinion that the evidence does not show such 'substantial subversion of fundamental change in the essential character of the property' as to warrant the removal of the restrictions." (Italics ours.)

In the present action we do not think there is any such departure or violation of the restrictive covenants and conditions in the subdivision itself that plaintiffs can complain of.

In practically all of the deeds from the Elizabeth Realty Company, the following clause appears: "12. Provided, however, that any of the conditions and restrictions herein contained may be at any time and in any manner changed by and with the mutual written consent of the parties of the first part, or its successors and the owner or owners for the time being of the lot of land hereby conveyed."

It is contended by plaintiffs that this proviso authorizing modification by grantor defeats the general plan.

This is the most serious contention we have to deal with, but on the present record plaintiffs have suffered no harm on account of this clause. The grantor has not materially changed any restrictive covenants or conditions, and none in regard to the property not being used for residential purposes. The slight departure of plaintiff, Dr. Lyon, himself, as to the use of his lot for the miniature golf course and Miss Burbank's "high class, high toned place" are not such that, under the facts

of record, affect the restrictive covenants and conditions of the deeds. Again, plaintiffs knew all about the restrictive covenants and conditions in their deeds when they purchased their lots, and should not now be allowed, except for good cause shown, to breach their solemn agreement. Those who have invested their money on the faith of these restrictions, covenants and conditions, are entitled to have the contract performed as written, unless there are equitable reasons to the contrary—none appear in this record. For the reasons given the judgment is

Affirmed.