MRS. MARY H. BRENIZER AND HUSBAND, ADDISON B. BRENIZER, v. GEORGE STEPHENS ET AL.

(Filed 26 November, 1941.)

1. **Deeds § 16—**

When restrictive covenants are inserted in deeds from the owner of a subdivision in accordance with a general plan of development and improvement of the property for residential purposes, the owners of property therein by deeds from the original owner or by *mesne* conveyances from him may enforce the restrictions against another owner of property within the development.

2. **Same—Encroachment of business upon property adjacent to subdivision does not affect enforceability of restrictive covenants inter se by owners of property within the subdivision.**

When restrictions are inserted in deeds from the owner of a real estate subdivision in accordance with a general plan of development of the property for residential purposes, and there has been no violation of the covenants by owners of property therein, the fact that property abutting the subdivision has been developed for business purposes, resulting in the property within the subdivision adjacent thereto becoming more valuable for commercial purposes and less valuable for residential purposes, does not entitle the owner of such adjacent property within the subdivision to have the restrictions declared inequitable and unenforceable as to him, since to relieve him of the restrictions would damage the remaining property owners within the subdivision who had bought and improved their respective lots in reliance on the restrictions formulated in accordance with the general plan of development. *Elrod v. Phillips*, 214 N. C., 472, and *Bass v. Hunter*, 216 N. C., 505, cited and distinguished in that in those cases it did not appear from the facts agreed that the restrictions in those cases were made pursuant to a general plan of development and improvement.

APPEAL by plaintiffs from *Alley, J.,* at April Term, 1941, of MECKLENBURG. Affirmed.

This proceeding was brought by plaintiff to have removed certain restrictions upon the use of her property occurring in her own deed and

*mesne* conveyances under which she holds, principally those requiring it to be used for residential purposes. She alleges such an encroachment of business in the neighborhood and adjacent area as to have destroyed or defeated the purpose of the restrictions and render their further observance or enforcement without object, oppressive, and inequitable. In this she is opposed by owners of other property, contiguous, adjacent, and neighboring that of the plaintiff, and held under substantially identical restrictions, uniform in the area described in the pleadings, in which the owners derived their title from a common source, with which the restrictions originated.

The suit was brought against certain named persons owning property within the area and "any other persons who may claim any interest in any of the lots shown upon the map recorded in Book 230, p. 128, in the Mecklenburg County, North Carolina, Registry," that being a map of the development containing plaintiff's lot, and the lots of numerous others held under deeds containing similar restrictions. When the case came on for hearing, many such persons, some seventy-five or more, had become parties defendant.

The facts may be summarized: Some time in the year 1911 the defendant, George Stephens, owned a large part of the area included in the map above referred to, and the Stephens Company, a corporation, of which George Stephens was president and manager, owned the rest. Together the holdings form an extensive area, known as "Blocks Nos. 7 and 9 of Myers Park," at present occupying the territory bounded by Providence Road, Hermitage Road, Granville Road, and Hopedale Avenue. The blocks are separated by Queens Road. This area was subdivided into numerous lots fronting on the streets named, and many of them were sold and are now owned or occupied by a great number of persons, including the defendants.

Intending to provide a section to be used exclusively for residential purposes, and thereby add to the ease, security and comfort of those who bought for that purpose, as well as to make the development more attractive to purchasers, the promoters, George Stephens and the Stephens Company, sold these lots and conveyed by deeds which, without exception, contain restrictions that they should be used only for residential purposes, and defendants and other owners and occupants, either directly or through *mesne* conveyances, hold their lots upon this condition, and assert that they bought with regard to the security and protection afforded them by similar restrictions in all other deeds to property within the area.

Plaintiff's lot is located on the corner of Block 7, where Hopedale Avenue, Queens Road, and Providence Road come together—at the apex of the block.

The evidence discloses that opposite the block, along the other side of Providence Road, a very considerable business development has taken place, including a miniature golf course, store, soda shop, beauty parlor, automobile service station, Sinclair filling station, meat market, grocery stores, and other business establishments, including a considerable quota of filling stations. Within the territory described as Blocks 7 and 9, Myers Park, including the property of plaintiffs and defendants, that being the territory restricted to residential use, there has been no violation of the restrictions imposed in the deeds, and none of the property has been used for other than residential purposes.

The plaintiffs claim that the business development along Providence Road, outside of the area, has destroyed the purpose of the restriction to residential use, and furnishes equitable ground for its annulment.

On the hearing the trial judge intimated that he would not hear testimony or evidence with regard to business developments outside the area protected by the restrictions in the deeds, and across Providence Road. On this intimation, the plaintiffs submitted to nonsuit and appealed.

*Taliaferro & Clarkson for plaintiffs, appellants.*
*Cochran & McCleneghan, Whitlock, Dockery & Shaw, and Cansler & Cansler for defendants, appellees.*

SEAWELL, J. The plaintiffs have raised some fundamental questions as to the rights of certain defendants to enforce the restrictions in the deeds, whether the covenants are personal, or run with the lands, and as to the separate consideration of the several subdivisions in Myers Park. The exigencies of decision do not require their discussion since there are defendants in the action whose legal and property interests are involved in the controversy and will be affected by the judgment rendered.

Applicable to the situation disclosed by the evidence, the general law is succinctly stated in 26 C. J. S., 548, 549, sec. 167: "Where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions on its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either on the theory that there is a mutuality of covenant and consideration, or on the ground that mutual negative equitable easements are created. The doctrine does not depend on whether the covenant is to be construed as running with the land." Similar statements are found in Tiffany, Real Property, 3rd Ed., Vol. 3, p. 501, sec. 867, and Thompson, Real Property, Perm. Ed., Vol. 7, pp. 49, 88, secs. 3567, 3605.

The law so stated is recognized in practically all of the United States, and is the law of this State. *Johnston v. Garrett,* 190 N. C., 835, 130

S. E., 835; *Franklin v. Realty Co.,* 202 N. C., 212, 217, 162 S. E., 199, 201. This is not disputed in the present case, nor is it denied that Block 7 in the Myers Park development, where plaintiff's lot is located, is a development of the kind and character to which the law applies and that the territory is uniformly covered by deeds containing, amongst other covenants, restrictions that the property shall be used only for residential purposes. The question for decision is whether evidence of business changes and developments along Providence Road, outside of the covenanted area, when none have occurred within the area, is available to plaintiffs in support of their demand that the restrictions in their deed be removed or declared inoperative because of radical changes affecting the property, which have defeated the purpose of the restrictions and rendered their enforcement inequitable.

The plaintiff bases her cause of action entirely on changes of condition along Providence Road outside of the Myers Park subdivision in which she, and others who have been made parties, own lots affected with the restriction, universal in that area, that these lots shall be used only for residential purposes. The exception to the exclusion of evidence of these business developments, of various kinds, on Providence Road outside of the covenanted area being under review, the right of plaintiff to rely on the facts so shown in her demand for equitable relief should be considered. If she could not do so, the evidence is irrelevant, and its exclusion proper.

The unmistakable weight of authority in this country answers this question in the negative, 26 C. J. S., 576, sec. 171, and cases cited, and that had been the interpretation of opinion in this State, see *McLeskey v. Heinlein,* 200 N. C., 290, 156 S. E., 489, and *Franklin v. Realty Co.,* 202 N. C., 212, 162 S. E., 199; but plaintiffs contend that *Elrod v. Phillips,* 214 N. C., 472, 199 S. E., 722, and *Bass v. Hunter,* 216 N. C., 505, 5 S. E. (2d), 558, have established a contrary holding. The defendants, however, point out that both of these cases were "friendly suits," in which both plaintiff and defendant were interested in the removal of the restrictions, and that all of the facts were not brought out as they would have been had the suit been adversary in fact as it was in form.

Indeed, on analysis of the facts presented to the lower court, and to this Court on appeal, in both cases, we find conspicuously absent from the facts agreed the essential conditions on which restrictions of this kind are enforced in favor of owners who are not parties or privies to the deed—the requirement that the deeds and restrictions therein are made in pursuance of a general plan of development and improvement— so as to give rise to a mutuality of covenant and consideration, or to create mutual negative equitable easements, or at least to give other

owners in the covenanted area a legal or equitable right to the enforcement of the restrictions in the deeds of other owners. In fact, in neither of the cases does it appear that restrictions of the kind were general throughout the territory, or, indeed, that they were found elsewhere than in the deeds from which they were sought to be removed or those of the immediate parties to the suit. The Court is presumed to have rendered its opinion upon these facts, and the cases are distinguishable from the case at bar in essential factual situation. Taking into consideration the finding of fact to which in each case the Court was bound, we do not think they were intended to commit the Court to the view presented by plaintiffs in a case of this kind. However that may be, the Court does not feel constrained to depart from its previous holdings in this respect, and ignore the great weight of authority, which, upon well considered reasoning, establishes the contrary rule, and adopt one which would be the beginning of the end of the security afforded home-builders in similar residential developments, becoming so necessary to modern living, and almost universally protected by law.

It is generally held that the encroachment of business and changes due thereto, in order to undo the force and vitality of the restrictions, must take place within the covenanted area. *McLeskey v. Heinlein, supra,* at 293, S. E., at 491; *Franklin v. Realty Co., supra; Continental Oil Co. v. Fennemore,* 38 Ariz., 277, 299 Pac., 132; *Bickell v. Moraio,* 117 Conn., 176, 167 Atl., 722; *Cuneo v. Chicago Title and Trust Co.,* 337 Ill., 589, 169 N. E., 760; *Drexel State Bank of Chicago v. O'Donnell,* 344 Ill., 173, 176 N. E., 348; *Moreton v. Palmer Co.,* 230 Mich., 409, 203 N. W., 116; *Wineman Realty Co. v. Pelavin,* 267 Mich., 594, 255 N. W., 393; *Pierce v. St. Louis Union Trust Co.,* 311 Mo., 262, 278 S. W., 398; *Rombauer v. Compton Heights Christian Church,* 328 Mo., 1, 40 S. W. (2d), 545; *Humphreys v. Ibach,* 110 N. J. Eq., 647, 160 Atl., 531. There authorities are all apposite to the point presented, and are typical of scores of others that might be cited in support of the proposition laid down. We feel disposed to quote freely from some of them which express the rule in language as adequate as any at our command.

Dealing with the same situation, the Supreme Court of Michigan, in *Moreton v. Palmer Co., supra,* at 413, N. W., at 117:

"But aside from and beyond that issue, those owning property in a restricted residential district or neighborhood, and especially those who have their homes there, and been led to buy or build in such locality by reason of restrictive covenants running with the land imposed upon the street, block or subdivision in which they have purchased, are entitled to protection against prohibited invasion regardless of how close business may crowd around them on unrestricted property, provided the original plan for a residential district has not been departed from in the re-

stricted district, street or block, and the restrictive requirements have been generally enforced, or accepted and complied with by purchasers. . . . The case falls well within that class where it is the policy of the courts of this State to protect property owners who have not themselves violated restrictions in the enjoyment of their homes and holdings, free from inroads by those who attempt to invade restricted residential districts and exploit them under some specious claim that others have violated the restrictions, or business necessities nullified them."

And in *Wineman Realty Co. v. Pelavin, supra,* at 599, N. W., at 395:

"The contention of defendants that the property could be used more profitably for business purposes does not impress us. While it is claimed that it would be far better were property on some main thoroughfares no longer restricted for residential purposes, nevertheless those who have purchased property and otherwise acted in reliance upon the restrictions have property rights that cannot be overlooked. Plaintiffs show that the value of their property would be unfavorably affected by such a violation of their rights. Restrictions generally observed will not be lifted because of business inroads around the subdivision."

In *Greer v. Bernstein,* 246 Ky., 286, 54 S. W. (2d), 927, dealing with changed conditions outside the subdivision involved, it is said: "However, such alterations and changes cannot be said to have such a fundamental effect as to entitle defendant to rely on this defense, even if it could be made available when the changes relied on were erected and constructed only on property adjacent to the development but not upon any part of it."

And in *Rombauer v. Compton Heights Christian Church, supra,* the same view is taken: "If no radical change in the condition and use of the restricted property occurs, the circumstances that there have been changes in the territory surrounding the covenanted area will not of itself be sufficient to destroy the restrictions. *Pierce v. St. Louis Union Trust Co., supra,* 311 Mo. loc. cit., 295, *et seq.,* 278 S. W. loc. cit. 408."

In rejecting as ineffective similar evidence of business developments in adjacent territory, the New Jersey Court, in *Humphreys v. Ibach, supra,* said: "Complainant relies on evidence of the increase in traffic on Cedar Lane and the growth in the number of stores and similar business establishments on this street east and west of the tract in question and even directly opposite it. Business on Palisades Avenue has also been proved. No business establishments, however, upon the tract which is the subject of this controversy have been shown, but it appears that 19 dwelling houses have been erected on the tract on Francis Street within the last few years on the faith of these restrictive covenants and in the belief of their owners that their property would not be depreciated for dwelling purposes by the encroachment of business within the restricted area."

To the same effect is *Heitkemper v. Schmeer,* 146 Ore., 304, 29 P. (2d), 540: "The fact that the character of the territory surrounding this restricted district has changed does not affect the question of the enforcement of the restriction within such district."

The plaintiffs, in their brief, point out that the lot from which they seek to remove the restrictions may be sold for $25,000 as business property, but as residential property it is worth much less. We think the observation of the Court in *Cuneo v. Chicago Title & Trust Co., supra,* rejecting such argument, is pertinent:

"While changes have taken place on Sheridan Road, and appellants' property abutting on that street would doubtless be more valuable as commercial property than as residence property, yet equity cannot, on that ground alone, abrogate and set aside restrictions on the use of that property which have been made for the benefit of other property which has not been so changed. While it may be a financial hardship upon appellants to enforce the single-dwelling restrictions on their lots, yet it must be borne in mind that these restrictions were in the deeds which they took to the property, and are made for the benefit of all of the lots on Castlewood Terrace."

See, also, *Drexel State Bank of Chicago v. O'Donnell, supra.*

The whole matter is well summed up in *Rombauer v. Compton Heights Christian Church, supra,* from which we quote further:

"Neither is it true that because a small part of a restricted district, lying along the edge or at the threshold thereof, is forced to bear the brunt of attack from outside commercial expansion, and as a result is impaired in value for the use prescribed by the restrictions—in these circumstances we say it is not true that the restrictions will be abated as to the part so affected because of the hardship visited upon that particular land as compared with the sheltered portions of the district. *Thompson v. Langan,* 172 Mo. App., 64, 83, 154 S. W., 808, 813; *Benzing v. Harmon,* 219 Mich., 532, 189 N. W., 69. The very purpose of the restrictions is to protect the property in the covenanted area from such invasions, *Trustees of Columbia College v. Thacher,* 87 N. Y., 311, 319, 41 Am. Rep., 365; and if the restrictions are of substantial value to the covenantees, equity may enforce them though serious injury result to the servient estate, *Batchelor v. Hinkle,* 210 N. Y. loc. cit., 251, 104 N. E. loc. cit. 631."

We are of opinion that the proposed evidence of business changes along Providence Road outside the covenanted area is not legally sufficient to support plaintiffs' demand for removal of the restrictions protecting the residential development, and since plaintiffs' case is based entirely on such evidence, nonsuit was proper.

Affirmed.