S. M. VERNON AND HIS WIFE, MYRTLE VERNON; JOHN H. HARDING AND HIS WIFE, EDNA HARTMAN STRADER HARDING; T. S. HUTCHINS AND HIS WIFE, GURTHA HUTCHINS; L. A. PLASTER, SR., AND HIS WIFE, LILLIE B. PLASTER; J. FRANK CASPER AND HIS WIFE, ANNIE CASPER; JOHN CLICK AND HIS WIFE, BESSIE N. CLICK; H. L. CROTTS AND HIS WIFE, ALMEDA S. CROTTS; VERNON M. BRADFORD AND HIS WIFE, LELIA MAE BRADFORD; J. W. INGE AND HIS WIFE, DORIS T. INGE; J. E. STANFORD AND HIS WIFE, ALMA STANFORD; H. T. REICH, AN UNMARRIED MAN; C. S. JOHNSON, AN UNMARRIED MAN; WILSON BROTHERS LUMBER COMPANY (A CORPORATION); THOMAS M. ARMFIELD, A WIDOWER; ANNE NOBLE NORTHUP, TRUSTEE FOR THE ESTATE OF W. C. NORTHUP; VIRGINIA S. PLEASANTS AND ESTATES ADMINISTRATION (A CORPORATION), EXECUTORS AND TRUSTEES OF THE ESTATE OF W. F. SHAFFNER, SR.; OSCAR O. EFIRD, TRUSTEE; WINSTON-SALEM BUILDING & LOAN ASSOCIATION; W. L. FERRELL, TRUSTEE; RANSOM S. AVERITT, TRUSTEE OF JESSE D. BRYANT; THE FIDELITY COMPANY, TRUSTEE; AND PIEDMONT FEDERAL SAVINGS & LOAN ASSOCIATION, PETITIONERS, v. R. J. REYNOLDS REALTY COMPANY (A CORPORATION); FRED S. HUTCHINS, TRUSTEE; FIRST FEDERAL SAVINGS & LOAN ASSOCIATION; CICERO C. SMITH AND HIS WIFE, EFFIE F. SMITH; SALLY J. JACKSON, TRUSTEE; L. K. MARTIN, TRUSTEE; SHENANDOAH LIFE INSURANCE COMPANY; W. C. HENDRIX AND HIS WIFE, BESSIE MAY HENDRIX; ELGIN T. PHELPS AND HIS WIFE, VERSIE PHELPS; H. G. GROGAN AND HIS WIFE, CLEONA MAE GROGAN; WILLIAM S. ROTHROCK, AN UNMARRIED MAN; ERNEST K. JAMES AND HIS WIFE, ELVA R. JAMES; L. C. PEGRAM AND HIS WIFE, DAISY PEGRAM; HUGHES L. LANE, A WIDOW; H. S. CODY, TRUSTEE; METROPOLITAN LIFE INSURANCE COMPANY (A CORPORATION); WILLIAM MESSICK, AN UNMARRIED MAN; TEDDY ROOSEVELT CROUSE AND HIS WIFE, MAUD CROUSE; ED CHAMPAGNE AND HIS WIFE, EMILY FRANCES CHAMPAGNE; T. W. SURRATT AND HIS WIFE, FLAUDIA L. SUR-

RATT; JUNIOR LEAGUE HOSPITAL FOR INCURABLES; CITY OF WINSTON-SALEM AND FORSYTH COUNTY, RESPONDENTS.

(Filed 31 January, 1946.)

**1. Deeds § 16—**

A restrictive covenant contained in deeds to lots in a subdivision developed according to a general scheme or plan is contractual in nature and creates a species of incorporeal property right.

**2. Same—Changed conditions outside development not grounds for relief against restrictive covenants in absence of breach within development.**

This action was brought for equitable relief against restrictive covenants contained in deeds to property in a residential development precluding sale or lease to Negroes for a period of 50 years. Plaintiffs allege that in recent years the whole surrounding area for the depth of one-quarter mile has been acquired by and is owned, used and occupied by Negroes, and that the restrictions had therefore become a burden and not a benefit to the property. *Held:* Radical change in the ownership, use and occupancy of the property immediately surrounding and adjacent to the restricted development affords no grounds for equitable relief against restrictive covenants when there has been no breach of the restrictions within the covenanted area.

**3. Equity § 1—**

It is not the way of equity to override the law or to invalidate contracts or to destroy property rights.

APPEAL by plaintiffs from *Nettles, J.,* at September Term, 1945, of FORSYTH. Affirmed.

Civil action for equitable relief against the burden of restrictive covenants contained in deeds to property in a residential development, heard on demurrer.

Eliminating all elaboration the complaint alleges:

Skyland, a residential section of Winston-Salem, was divided and sold under a uniform scheme or plan of development which included a restrictive covenant inserted in all the deeds, expressly prohibiting sale or lease to Negroes for a period of 50 years. Plaintiffs and defendants now own all the property within Skyland. There has been no breach of the covenant by any property owner. When the property was developed and the lots therein were sold, all the property immediately surrounding and adjacent to Skyland was owned, occupied, and used by white people only. At that time purchasers had no cause to believe that the surrounding conditions would ever adversely affect the desirability of the property as an exclusive white residential section. However, in recent years the whole surrounding area for a depth of a quarter mile has been acquired by, and is now owned, used, and occupied by Negroes. This radical change in conditions outside but immediately adjacent to

Skyland has made further sales of property within the development to whites impossible except at greatly reduced prices, renders the restriction burdensome, and causes plaintiffs irreparable damage. Even so, defendants, or some of them, still assert the validity of the covenant and insist upon its observance. By reason of the facts alleged the restrictive covenant should be canceled and annulled as a cloud on the title of plaintiffs.

When the case came on for hearing in the court below certain defendants appeared and demurred *ore tenus* for that the complaint fails to state a cause of action. The demurrer was sustained and plaintiffs appealed.

*Ingle, Rucker & Ingle for plaintiff, appellants.*
*No counsel contra.*

BARNHILL, J. That covenants reasonably restricting the ownership, use, or occupancy of land, inserted in deeds as a part of a general scheme or plan of development, for the benefit of all owners of property within the development, are valid is conceded. 14 Am. Jur., 616. And plaintiffs do not challenge the validity of a covenant against the sale or lease of property to persons of a certain race or color or restricting its ownership or occupancy to persons of the Caucasian race. *Eason v. Buffaloe,* 198 N. C., 520, 152 S. E., 496; *Grady v. Garland,* 67 App. D. C., 73, 89 F. (2d), 817 (Writ of *certiorari* denied, 82 L. Ed., 536); *Meade v. Dennistone,* 114 A. L. R., 1227; Annos. 9 A. L. R., 120, 66 A. L. R., 531, 114 A. L. R., 1237; 14 Am. Jur., 618.

So then the case comes to this: When the covenant was inserted in the deeds to all the property in Skyland as a part of a uniform plan of development, it was thought to be an advantageous restriction materially enhancing the value of the property for residential purposes. The covenant has not been breached. It has served and is serving its purpose. Even so, there has been a radical change in the complexion of the use and occupancy of all the property immediately surrounding Skyland so that now the restriction is more burdensome than beneficial.

Hence this appeal poses for decision one question only: Does a radical change in the ownership, use, and occupancy of the property immediately surrounding and adjacent to the restricted development afford grounds for equitable relief against the pleaded covenant when there has been no breach thereof within the covenanted area?

While there are decisions *contra,* the great weight of authority in this country answers in the negative. 14 Am. Jur., 615; 26 C. J. S., 549; Annos. 46 A. L. R., 372, 54 A. L. R., 812; 85 A. L. R., 986. (See also cases cited in *Brenizer v. Stephens,* 220 N. C., 395, 17 S. E. (2d), 471.)

Decisions in this jurisdiction are in accord with the majority view. *Brenizer v. Stephens, supra; Turner v. Glenn,* 220 N. C., 620, 18 S. E. (2d), 197; *Sheets v. Dillon,* 221 N. C., 426, 20 S. E. (2d), 344; *Franklin v. Realty Co.,* 202 N. C., 212, 162 S. E., 199; *Johnston v. Garrett,* 190 N. C., 835, 130 S. E., 835; *Starkey v. Gardner,* 194 N. C., 74, 138 S. E., 408. *Cf. Humphrey v. Beall,* 215 N. C., 15, 200 S. E., 918; *McLeskey v. Heinlein,* 200 N. C., 290, 156 S. E., 489.

The covenant is contractual in nature and creates a species of incorporeal property right. *Sheets v. Dillon, supra.* Its purpose is to preserve the covenanted area as a residential section for Caucasians only. It does not purport to regulate or control the use and occupancy of adjacent property or to prevent the invasion thereof by members of other races.

Ordinarily the acquiescence of owners in the breach of the covenant in respect to some lots constitutes a waiver of the right to insist upon it as to others. (*Cf. McLeskey v. Heinlein, supra.*) This law of waiver is the fundamental principle that underlies the decisions in such cases and gives equity a toe hold to interfere and relieve against covenants which have become burdensome. Anno. 46 A. L. R., 372. But it is not the way of equity to override the law or to invalidate contracts or to destroy property rights.

Contractual relations do not disappear as circumstances change. So equity cannot balance the relative advantages and disadvantages of a covenant and grant relief against its restrictions merely because it has become burdensome. It is bound to give effect to the contract unless changed conditions within the covenanted area, acquiesced in by the owners to such an extent as to constitute a waiver or abandonment, is made to appear. *McLeskey v. Heinlein, supra; Franklin v. Realty Co., supra.*

The changed conditions outside the development afford no grounds for relief. Those who purchase property subject to restrictive covenants must assume the burdens as well as enjoy the benefits, for equity does not grant relief against a bad bargain voluntarily made and unbreached.

Plaintiffs insist that *Elrod v. Phillips,* 214 N. C., 472, 199 S. E., 722, and *Bass v. Hunter,* 216 N. C., 505, 5 S. E. (2d), 558, are in conflict with this conclusion and align this Court with the minority view. In this we cannot concur. We, in *Brenizer v. Stephens, supra,* differentiated these decisions in this language:

". . . in both cases, we find conspicuously absent from the facts agreed the essential conditions on which restrictions of this kind are enforced in favor of owners who are not parties or privies to the deed—the requirement that the deeds and restrictions therein are made in pursuance of a general plan of development and improvement—so as to give rise to a

mutuality of covenant and consideration, or to create mutual negative equitable easements, or at least to give other owners in the covenanted area a legal or equitable right to the enforcement of the restrictions in the deeds of other owners. In fact, in neither of the cases does it appear that restrictions of the kind were general throughout the territory, or, indeed, that they were found elsewhere than in the deeds from which they were sought to be removed or those of the immediate parties to the suit."

This distinction has since been recognized and approved in two other cases, *Turner v. Glenn, supra,* and *Sheets v. Dillon, supra.*

For the reasons stated the judgment below is
Affirmed.