H. L. MILLS AND WIFE, CATHERINE C. MILLS; ALICE W. FRAIN; L. D. USSERY AND WIFE, WILLIE MAE USSERY; STAN OLSEN AND WIFE, NANCY OLSEN; W. A. RHYNE; STEVE SANDERS AND WIFE, EMILY L. SANDERS; ANN PRESSGRAVES; SHIRLEY M. McGILL; E. L. GRANTHAM AND WIFE, GERTRUDE D. GRANTHAM; M. L. SMITH AND WIFE, MARGARET H. SMITH; ADRIAN E. AMAN; ELLIE G. FUNDERBURKE; ROBERTA WRIGHT; T. R. TODD AND WIFE, ELIZABETH TODD; S. M. VILLAS AND WIFE, ELIZABETH VILLAS; E. R. HOLLAND AND WIFE, NITA G. HOLLAND; THELMA H. DUNN; L. G. McNEIL AND WIFE, LEXIE E. McNEIL; T. W. RIDDLE AND WIFE, SUSAN RIDDLE v. HTL ENTERPRISES, INC., A CORPORATION

No. 7726SC343

(Filed 6 June 1978)

1. **Deeds § 20.7— residential restrictions—use of lot for parking—no waiver or estoppel**

    The use of a subdivision lot for parking by a plumbing company and, subsequently, a candle shop did not render invalid covenants restricting use of the lot to residential purposes or constitute a waiver or estoppel of the right of owners of other subdivision lots to enforce the restrictive covenants.

2. **Deeds § 20.1— residential restrictions—use of lot for parking for fried chicken outlet**

    The use of a subdivision lot as a parking area for a retail fried chicken outlet serving between 2,000 and 2,500 customers per week would constitute a violation of a covenant restricting use of the lot to residential purposes.

3. **Deeds § 20.8— residential restrictions—changes outside restricted area**

    The trial court erred in declaring subdivision residential restrictions null and void as to one subdivision lot because the neighborhood in which the lot is located has undergone such a radical, substantial and fundamental change from residential to business purposes as to render the property no longer suitable or valuable for residential purposes where the changes which have taken place in the area in question have occurred outside the restricted area.

4. **Deeds § 20.1— restrictive covenants—effect of zoning**

    A zoning ordinance will neither nullify nor supercede a valid restriction on the use of real property.

APPEAL by plaintiffs from *Walker (Ralph A.), Judge.* Judgment entered 17 March 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 8 February 1978.

Plaintiffs, property owners and residents of Morningside Drive subdivision in the City of Charlotte, filed a complaint seeking to enjoin defendant from violating certain restrictive covenants by constructing a parking lot for a retail fried chicken

outlet on a lot which fronts on Central Avenue with sideline down the margin of Morningside Drive.

The cause came on for a hearing in Superior Court. The parties waived the jury trial and stipulated to the facts with one witness testifying for defendant. The Court entered the following judgment:

"THIS CAUSE coming on for trial before the undersigned Judge of Superior Court at the March 7, 1977, Non-Jury Schedule of Superior Court for Mecklenburg County, and having been heard by the undersigned Superior Court Judge as the trier of facts sitting as Judge and Jury, and, having heard the evidence and considered the Stipulations of Fact and other evidence offered by the attorneys for the Plaintiffs and Defendant, the Court finds the following facts:

1. The Plaintiffs are all owners and grantees by mesne conveyances of lots fronting on Morningside Drive as shown on that certain map recorded in Map Book 4 at Page 403 in the Mecklenburg Public Registry; and Morningside Drive, as an area or subdivision, was originally platted by John Crosland Company with the map being recorded as referred to above on or about March 7, 1940.

2. The Defendant is a North Carolina corporation, and is the owner of Lots 1 and 2 in Block 5 of Morningside Drive as shown on map recorded in Map Book 4 at Page 403, having purchased said lots in April, 1975.

3. In April, 1940, John Crosland Company as the owner of all the lots appearing on map recorded in Map Book 4 at Page 403 of said Registry imposed restrictions on certain of said lots, as such restrictions are found in Book 1008 at Page 397 of the Mecklenburg Public Registry, which restrictions read in pertinent parts as follows:

(a) All lots in the tract (as described above) shall be known and described as residential lots, and no structures shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single family dwelling not to exceed two and one-half stories in height and a private garage for not more than two car and servants quarters.

. . .

(i) These covenants are to run with the land and shall be binding on all the parties and all persons claiming under them until January 1, 1965, at which time said covenants shall be automatically extended for successive periods of ten years unless by a vote of the majority of the then owners of the Lots it is agreed to change the said covenants, in whole or in part.

(j) If the parties hereto, or any of them, or their heirs or assigns, shall violate or attempt to violate any of the covenants herein it shall be lawful for any other person or persons owning any real property situated in said development or subdivision to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenant and either to prevent him or them from so doing or to recover damages or other dues for such violation.

. . .

Such lots generally affected are those owned by the Plaintiffs and facing on Morningside Drive as well as two other lots being Lot 1, Block 5 (owned by the Defendant) and Lot 6, Block 2 (owned by individuals not parties to this proceeding), both of which front on Central Avenue and are located on the west and east side of Morningside Drive respectively. Said restriction agreement was placed of record by John Crosland Company before it conveyed any of the lots that it owned appearing on the map in Map Book 4 at Page 403 in the Mecklenburg Public Registry.

4. In conveying lots covered by said restriction agreement and appearing on map in Map Book 4 at Page 403, John Crosland Company made specific reference to the Book and Page of the restriction agreement in question or another of supposed similar content.

5. The Defendant, acquired Lots 1 and 2 in Block 5 and commenced construction of a restaurant facility on Lot 2. As an integral part of the restaurant operation, the Defendant intends to use Lot 1 as a paved parking area and to erect a sign for advertising purposes on Lot 1. Shortly after com-

mencing construction of the restaurant facility, the Defendant ceased construction when the Plaintiffs instituted this action, and, when construction stopped, the Defendant had completed the foundation on Lot 2.

6. Throughout the history of the real property in question, there have been no instruments filed for record in the Mecklenburg Registry containing conditions or restrictions affecting or limiting the use of the property until the filing of that certain restriction agreement recorded in Book 1008 at Page 397 by John Crosland Company which restricts for residential purposes the lots with checkmarks indicated thereon on Defendant's Exhibit 1. Specifically, Lots 2 and 3 in Block 4, Lot 1 in Block 11, Lot 5 in Block 2, and Lot 1 in Block 8 were not subjected to any of the aforementioned residential restrictions.

7. The residential convenants appearing in the restriction agreement in Book 1008 at Page 397 in the Mecklenburg Public Registry were placed on the property in question, including the lot owned by the Defendant which is in question (being Lot 1 in Block 5) over thirty-five (35) years ago at a time when the property was just inside the Charlotte City Limits.

8. Other than Lot 1 in Block 5 and Lot 6 in Block 2 (on the same side of the street on Central, but on the opposite or east side of Morningside Drive), all of the other lots subjected to the residential restrictions are facing or fronting on Morningside Drive which is a pleasant, well-kept and attractive residential area of one-story houses. Both lots mentioned herein, being Lot 1 in Block 5 and Lot 6 in Block 2, are presently vacant and front on Central Avenue with a side lot line on each lot being contiguous to Morningside Drive.

9. Central Avenue is a main four-lane thoroughfare in Charlotte, and the growth of the city over the past thirty (30) years or so has caused Central Avenue to develop commercially for general business uses so that few residential dwellings remain on Central Avenue which are used for such purposes at this time. Central Avenue is not considered to be a residential street.

10. Central Avenue runs in front of the property in question (being Lot 1 in Block 5 as one of the lots owned by the Defendant), and is a major artery for vehicular traffic in a generally east-west direction; that the significant growth of the City of Charlotte has caused Central Avenue to become a traffic thoroughfare between the uptown commercial area and a suburban shopping center or commercial area.

11. The Charlotte City Limits are now several miles beyond the property in question to the east and various commercial expansion has taken place in the immediate area of the property in question since such covenants were imposed on the Morningside Drive property, even though several business establishments were located in the neighborhood of the property in the year 1940 when the covenants were placed on the property. In the area immediately surrounding the property in question to the north, east and west, and within a radius of approximately 750 feet on Central Avenue, there are located two residential dwellings, an upholstery and furniture company, four retail stores in a small shopping center, a chiropractor's office, a parking area and a Pizza Hut across the street from the property to the north, an auto parts business approximately five small retail stores, and an office location used by a music company, insurance company and construction company.

12. That while the neighborhood or general area in which the Defendant's property is situated was many years ago a residential area, because of the influx of business, the said neighborhood adjacent to the Defendant's lot in question has undergone a radical, substantial and fundamental change in character from residential to a business character.

13. That the lots owned by the Defendant (being Lots 1 and 2 in Block 5) are exceedingly more valuable for business or commercial purposes than for residential purposes with their value for commercial purposes being approximately $38,000.00 and their value for residential purposes being approximately $4,000.00, and the property is no longer suitable, useful or valuable for residential purposes but is more suitably employed and is more valuable for business purposes.

14. The property in question is zoned by the City of Charlotte for business use which would allow retail activity outdoors as well as indoors and has been so zoned by the City since the zoning ordinance was first put into effect as to this property, a period of at least fifteen (15) years.

15. For a number of years, up through April, 1975, the lot in question owned by the Defendant was used for parking purposes for customers of Phillip's Plumbing Company and later a retail candle shop which were located (with the candle shop being the successor to the plumbing company) on the adjacent lot, being Lot 2, Block 5 (not one of the lots subject to the restriction agreement). These Plaintiffs did not, however, formally and legally object to the use of the lot in question for such parking.

16. The lot owned by the Defendant which is in question in this proceeding (Lot 1 in Block 5) fronts on Central Avenue in a business zoned and commercially developed area separate from essentially all other lots subjected to the restriction agreement, except one, and should be considered separate and apart from such lots which face on Morningside Drive and which are used for residential purposes in determining reasonableness of the use of the property in question.

17. That the Court, upon motion of one of the parties to the proceeding, visited the area in question and physically viewed the lots and surrounding areas which are the subject of this proceeding in order to gain a better appreciation for the physical characteristics of the area.

Upon the foregoing findings of fact, the Court makes the following conclusions of law:

1. That the neighborhood and vicinity within which the Defendant's property in question (being Lot 1 in Block 5) is situated his (sic) undergone a fundamental, radical and substantial change since the recording of the restriction agreement in question so as to render said property wholly unfit and unsuitable for residential purposes.

2. That to continue said restrictions in full force and effect as to the lot in question would work a great hardship

upon the Defendant, would be contrary to the basic rights incidental to land ownership and would be of little or no benefit to adjoining property owners located on Central Avenue.

3. That the restrictions placed on Defendant's lot almost thirty-seven years ago no longer serve the purpose for which they were imposed, but are detrimental and injurious to the property and if permitted to remain thereon would render the property virtually useless and worthless inasmuch as it would have to be used for residential purposes when essentially all surrounding lots are used for office and business purposes.

4. That to allow continued enforcement of the residential restrictions as to the Defendant's lot would be to deny the Defendant the proper use and benefit of said property.

5. That in viewing the total physical layout and scheme of planning, the Defendant's property must be considered separate and apart from the residential lots fronting on Morningside Drive inasmuch as the Defendant's lot fronts on commercially developed Central Avenue.

6. That the lots presently being used for residential purposes and fronting on Morningside Drive are not intended to be, nor shall they be considered to be, affected by the determinations made in these conclusions of law.

Now, Therefore, it is Ordered, Adjudged    and Decreed as follows:

1. That the residential restrictions appearing of record affecting the Defendant's lot (Lot 1 in Block 5) be, and the same restrictions are hereby, declared null and void and no longer enforceable, as to the lot in question regarding the content of the restrictions, by the Plaintiffs or any other owner of a lot restricted for residential purposes appearing on the map in Map Book 4 at Page 403 in the Mecklenburg Public Registry.

2. That the Defendant be permitted to use the lot in question for any lawful purpose and specifically for purposes

of landscaping and paving it as a parking area incidental to the operation of a restaurant on Lot 2 in Block 5."

From the judgment entered, the plaintiffs appealed assigning error.

*Martin, Howerton, Williams & Richards, by Philip F. Howerton, Jr., for plaintiff appellants.*

*Boyle, Alexander & Hord, by Robert C. Hord, Jr., for defendant appellee.*

ERWIN, Judge.

The plaintiffs objected and excepted to conclusions of law Numbers 1, 2, 3, 4, 5, and 6, and to the entry of the judgment based thereon, contending that the facts, as found by the Court, do not support the conclusions of law that the restrictions should not be enforced against the defendant. We agree with the plaintiffs, that the restrictive covenants found in plaintiffs' and defendant's chains of title are enforceable *inter se* by plaintiffs to prohibit the non-residential use proposed by defendant.

Our Supreme Court held in *Elrod v. Phillips*, 214 N.C. 472, 477, 199 S.E. 722, 724-725 (1938):

". . . We have two lines of decisions in this jurisdiction involving the circumstances under which restrictive covenants in deeds for property originally devoted to residential purposes are rendered unenforceable or are enforced. The leading cases where such restrictions were held unenforceable are *Starkey v. Gardner*, 194 N.C., 74, and *Snyder v. Caldwell*, 207 N.C., 626, and the leading cases wherein such restrictions are held enforceable are *Johnston v. Garrett*, 190 N.C., 835, and *McLeskey v. Heinlein*, 200 N.C., 290."

Although there are two lines of decisions on the subject before us, we are not at liberty to select one over the other unless the facts of the case before us justify the line we are to follow.

[1] The above finding of fact Number 15 reveals that the lot in question was used for parking by a plumbing company and, subsequently, a candle shop. We do not consider such parking within the restricted area to be significant enough to undo the force and

validity of the restrictions before us or to constitute a waiver or an estoppel of plaintiffs' right to enforce the covenants. *See Tull v. Doctors Building, Inc.*, 255 N.C. 23, 120 S.E. 2d 817 (1961); *Van Poole v. Messer*, 25 N.C. App. 203, 212 S.E. 2d 548 (1975); *Cotton Mills v. Vaughan*, 24 N.C. App. 696, 212 S.E. 2d 199 (1975).

[2]   The evidence for defendant reveals the following:

> "Holly Farms outlets normally operate between the hours of Ten a.m. and Nine p.m. We could change the hours as we saw fit. Based on my experience a Holly Farms outlet in this area averages $5,700.00 per week and an average sale of $2.63. This is roughly 2,500 or 2,000 customers per week. The majority of these customers drive on the premises."

To us this would constitute a significant commercial use of the property, in violation of the restrictive covenants.

*Long v. Branham*, 271 N.C. 264, 156 S.E. 2d 235 (1967), involved a situation in which the defendant desired to construct a roadway across his lot in a subdivision subject to restrictive covenants. In concluding that such construction would violate the restrictions, Justice Sharp (now Chief Justice) observed, referring to the intent of the developer and those purchasing lots in the subdivision: "Their objective was a quiet residential area in which the noise and hazards of vehicular traffic would be kept at a minimum. . . ." 271 N.C. at 275, 156 S.E. 2d at 243. *See also Starmount Co. v. Memorial Park*, 233 N.C. 613, 65 S.E. 2d 134 (1951).

We find a factual distinction between the case at bar and *Muilenburg v. Blevins*, 242 N.C. 271, 87 S.E. 2d 493 (1955), where our Supreme Court approved the nullification of certain restrictions. *Muilenburg, supra*, at 275-276, 87 S.E. 2d at 496, reveals:

> ". . . An apartment house is located on the lot adjacent to the plaintiffs' property to the east on Circle Avenue. In this same block at the corner of Circle Avenue and Willoughby Street, according to the record, is a plumbing and heating establishment. Adjacent to the property of the plaintiffs on the south is an apartment house, while on the west side of Providence Road opposite plaintiffs' property the entire block is occupied by an apartment house, an office building and a filling station."

Defendant urges, in its brief, that we consider seriously the following:

"At the outset, the Defendant desires to again enforce the idea before this Court that the lot which it proposes to use for a parking area fronts on a different street entirely from all of the other residentially restricted lots and is a part of an area which is zoned for business and generally used for business and office purposes."

We do not make a distinction between Lot 1, Block 5, and the other lots in the subdivision. Lot 1 appears to be one side of the gate which protects the subdivision. If Lot 1 is released, the gate is opened to release all the remaining lots in the subdivision.

As our Supreme Court pointed out in *Tull v. Doctors Buiding, Inc., supra,* at 40, 120 S.E. 2d at 829:

"Business uses not permissible in this residential subdivision have gradually approached it on land outside this subdivision and not a part of it. . . . If equity should permit these border lots to deviate from the residential restriction, the problem arises anew with respect to the lots next inside those reliev- ed from conforming. Thus, in time, the restrictions thoughout the tract will become nugatory through a gradual infiltration of the spreading change."

The defendant contends that the factual situation in the case at bar is more closely akin to that presented in *Elrod v. Phillips, supra,* and that we should follow its holding and affirm the case before us. However, our Supreme Court has distinguished *Elrod, supra,* in *Sheets v. Dillon,* 221 N.C. 426, 20 S.E. 2d 344 (1942), and *Brenizer v. Stephens,* 220 N.C. 395, 17 S.E. 2d 471 (1941). We con- clude that *Elrod, supra,* is not controlling here, and we instead believe that the line of cases represented by *Brenizer, supra,* is controlling.

[3] It appears from the record that the changes which have taken place in the area in question have occurred outside the restricted area. Citing considerable authority, our Supreme Court stated in *Brenizer v. Stephens, supra,* at 399, 17 S.E. 2d at 473: "It is generally held that the encroachment of business and changes due thereto, in order to undo the force and vitality of the

restrictions, must take place *within* the covenanted area." (Emphasis added.) *See also Lamica v. Gerdes*, 270 N.C. 85, 153 S.E. 2d 814 (1967); *Tull v. Doctors Building, Inc., supra.* Clearly one important rationale for the imposition of restrictive covenants is to protect the character of the area subject thereto from encroachment by changing conditions occurring in surrounding areas. We conclude that the trial court should not have considered the changes occurring outside the restricted area.

Our Supreme Court, in *Lamica v. Gerdes, supra,* dealt with restrictive covenants containing very similar language to those we find here. In *Lamica, supra,* at 90, 153 S.E. 2d at 818, Justice Branch wrote for the Court as follows:

> "Here, there is no need to search for the grantor's intent. The developer clearly and distinctly expressed an intention to impose the restrictions on the land, and to allow any person or persons owning any real property situate in said development or subdivision to enforce the restrictions *inter se.* If there were any ambiguity in the language of the grantor as to whether the developer intended to impose restrictions for his personal benefit, it is dispelled by his outright grant to his grantees of the right to enforce the restrictions.
>
> > '*Sometimes restrictive covenants expressly provide that they may be enforceable by any owner of property in the tract. Where such is the case, the right of an owner to enforce the same is, of course, clear.* Similarly, where the agreement declares that the covenant runs with the land for the benefit of other lots or other owners, it may be so enforced.' 20 Am. Jur., 2d, § 292, p. 857. (Emphasis ours)."

[4] The record reveals that the property in question is now zoned for business. A zoning ordinance will neither nullify nor supercede a valid restriction on the use of real property. *Tull v. Doctors Building, Inc., supra.*

The record clearly shows that defendant was aware of the restrictions when it purchased the lot in question. In any event, the restrictions were duly recorded, and lots were conveyed by deeds specifically referencing the same.

Based on the foregoing, we conclude that the trial court erred in finding that the restrictions were no longer enforceable as to the lot in question. Accordingly, the judgment of the trial court is

Reversed.

Judges VAUGHN and MITCHELL concur.